1  Ben F. Pierce Gore (SBN 128515)
2  PRATT & ASSOCIATES
   1901 S. Bascom Avenue, Suite 350
3  Campbell, CA 95008
   Telephone: (408) 429-6506
4  Fax: (408) 369-0752
   pgore@prattattorneys.com
5
   *Attorney for Plaintiff*
6

**Filed**

JUN 12 2012

E-filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11                 CV 12-03029 PSG

12  SUZANNE SMEDT, individually and on    | Case No.
    behalf of all others similarly situated,
13                                         | **CLASS ACTION AND REPRESENTATIVE**
                 Plaintiff,                | **ACTION**
14
    v.                                     | **COMPLAINT FOR DAMAGES,**
15                                         | **EQUITABLE AND INJUNCTIVE RELIEF**
    THE HAIN CELESTIAL GROUP, INC.,
16                                         | **JURY TRIAL DEMANDED**
                 Defendant.
17

18

19         Plaintiff, through Plaintiff's undersigned attorneys, brings this lawsuit against The Hain

20  Celestial Group, Inc. (hereinafter "Hain" or "Defendant") as to Plaintiff's own acts upon personal

21  knowledge, and as to all other matters upon information and belief. In order to remedy the harm

22  arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff brings this

23  action on behalf of a class of California consumers who, within the last four years, purchased

24  Defendant's products: (1) labeled with the ingredient "Evaporated Cane Juice" or "Organic

25  Evaporated Cane Sugar Juice;" (2) labeled "All Natural" but which contain artificial ingredients,

26  flavorings, added coloring, and/or chemical preservatives; and/or (3) labeled with a "No Trans

27  Fat" or other nutrient content claim but which contain fat, saturated fat, sodium or cholesterol in

28

*Class Action Complaint*

1 excess of the disqualifying amounts stated in 21 C.F.R. § 101.13(h)[1]; (collectively products in

2 categories 1, 2 and 3 are referred to herein as "Misbranded Food Products").

## INTRODUCTION

4     1.     Every day, millions of Americans purchase and consume packaged foods.

5 Identical federal and California laws require truthful, accurate information on the labels of

6 packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded

7 food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is

8 worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their

9 purchase price.

10     2.     Defendant The Hain Celestial Group, Inc. is a leading natural and organic food and

11 personal care products company. Hain Celestial Group, Inc. participates in almost all natural

12 food categories with brands that include Celestial Seasonings®, Terra®, Garden of Eatin'®,

13 Health Valley®, WestSoy®, Earth's Best®, Arrowhead Mills®, DeBoles®, Hain Pure Foods®,

14 FreeBird™, Hollywood®, Spectrum Naturals®, Spectrum Essentials®, Walnut Acres Organic™,

15 Imagine Foods™, Rice Dream®, Soy Dream®, Rosetto®, Ethnic Gourmet®, Yves Veggie

16 Cuisine®, Linda McCartney®, Realeat®, Lima®, Grains Noirs®, Natumi®, JASON®, Zia®

17 Natural Skincare, Avalon Organics®, Alba Botanica® and Queen Helene®.

18     3.     Defendant has chosen to implement a marketing strategy to position its products as

19 a healthy option. For example, in its 2011 Annual Report Defendant states:

20         We manufacture, market, distribute and sell natural and organic products, under
        brand names which are sold as "better-for-you," providing consumers with the
21         opportunity to lead A Healthy Way of Life™.

22     4.     On its website, www.hain-celestial.com, Defendant states as follows:

23

24 [1] For a food, except a meal product as defined in §101.13(l) or a main dish product as defined in

25 §101.13(m), these levels are more than 13.0 g of fat, 4.0 g of saturated fat, 60 mg of cholesterol, or 480 mg
of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference

26 amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g. If a food is a meal
product as defined in §101.13(l), these levels are more than 26 g of fat, 8.0 g of saturated fat, 120 mg of

27 cholesterol, or 960 mg of sodium per labeled serving. If a food is a main dish product as defined in
§101.13(m), these levels are more than 19.5 g of fat, 6.0 g of saturated fat, 90 mg of cholesterol, or 720 mg

28 of sodium per labeled serving.

*The word "terra" comes from the Latin root word "tierra," which means "of the earth." TERRA Chips stay true to the "tierra" namesake by providing a chip made with all-natural, earth made ingredients that allow you to indulge your taste buds without compromising a healthy lifestyle.*

\* \* \*

*All Natural and Deliciously Different*

*Our vegetable chips are always 100% Natural. Each one-ounce serving of TERRA Exotic Vegetable Chips contains a full serving of vegetables and no trans fats, and TERRA Chips are cooked only in expeller pressed oils.*

*We have brought a new distinction to gourmet snacks by providing premium quality vegetable chips in vibrant natural colors and a variety of fabulous flavors. This tradition began over 20 years ago with our line of TERRA Original Chips, when we proved that vegetables in a variety of forms are still delicious.*

*Delight your taste buds with the earth's most precious mix of exotic vegetables: a seasonal mix of taro, sweet potato, yuca, batata, parsnip, and ruby taro. Some are sweet, all are savory, and mixed together they achieve a satisfying balance of flavors - complex, nutty, rich and delicate. We are always working on creating even more innovative flavor combinations. Check back often for these new, flavorful additions!*

5.      Defendant recognizes that health claims drive food sales, and actively promotes the purported health benefits of its Misbranded Food Products, notwithstanding the fact that such promotion violates California and federal law. As part of this strategy, Defendant makes a number of claims about its products. Defendant's reason for doing so was driven by its pecuniary interests.

6.      If a manufacturer is going to make a claim on a food label or on its website which is an extension of the label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled. As described more fully below, Defendant has made, and continues to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels. The Defendant is aware of the risks of doing so and expressly list in its 2011 Annual Report the possibility that it "could be the target of claims relating to false or deceptive advertising under .... U.S. federal and state laws, including the consumer protection statutes of some states" as a risk factor.

7.      Under California and federal law, Defendant's Misbranded Food Products cannot

legally be held or sold. These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits. More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related disease or health-related condition.

8.      Example 1 - Terra Stripes & Blues Sea Salt Potato Chips unlawfully makes a "No Trans Fat" nutrient content claim despite containing more than total grams of fat allowed per 50 grams. This level of total fat bars the making of a nutrient content claim without a disclosure statement.

9.      The principal display panel of the Terra Stripes & Blues Sea Salt Potato Chips states:



10.     The product contains over 14 grams of total fat per 50 grams, over the total gram limit without the required disclosure. This same type of unlawful nutrient content claims is found on label of other Misbranded Food Products.

11.     Because of the total fat content, pursuant to federal and California law, Defendant must include a warning statement adjacent to its trans fat and cholesterol nutrient claims that inform consumers of the high levels of fat, saturated fat, cholesterol or sodium.  No such disclosure statement currently exists on these products.  Therefore, they are misbranded as a matter of federal and California law and cannot be sold because they are legally worthless.

12.     Example 2 - Defendant's Terra Exotic Vegetable Mediterranean Chips list the following ingredients:

> Ingredients: A seasonal mix of root vegetables (taro, sweet potato, batata, yuca, parsnip), expeller pressed canola oil and/or safflower oil and/or sunflower oil, seasoning (whey [milk], sea salt, *organic evaporated cane sugar juice*, spices, onion powder, garlic powder, autolyzed yeast extract, natural olive oil flavor, citric acid, vinegar powder [maltodextrin, distilled vinegar solids], safflower oil, oil of lemon, toasted sesame oil), beet juice concentrate (for color).

13.     The Nutrition Facts for Defendant's Terra Exotic Vegetable Mediterranean Chips state the total grams of sugar, yet the ingredients section fails to list "sugar" or "syrup" as an ingredient.  Instead, the label lists "organic evaporated cane sugar juice" as an ingredient, when such is not "juice" at all.  Defendant fails to disclose the fact that "organic evaporated cane sugar juice" is, in its ordinary and commonly understood terms, "sugar" or "dried cane syrup." Defendant unlawfully uses the term "organic evaporated cane sugar juice" on its labels despite the fact that the FDA has indicated that such a practice is "false and misleading" to consumers and that any such use resulted in a product being "misbranded."

14.     Example 3 - The principal display panel of Defendant's Coconut Dream Coconut Drink states:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17      15.     The label lists the following ingredients:

18      Ingredients: filtered water, coconut cream, *evaporated cane juice*, tricalcium
        phosphate, carrageenan, gellan gum, sea salt, natural flavors, vitamin A palmitate,
19      vitamin D2, vitamin B12 (cyanocobalamine).

20      16.     The Nutrition Facts for Defendant's Coconut Dream Coconut Milk state the total
21
22      grams of sugar, yet the ingredients section fails to list "sugar" or "syrup" as an ingredient.
23      Instead, the label lists "evaporated cane juice" as an ingredient, when such is not "juice" at all.
24      Defendant fails to disclose the fact that "evaporated cane juice" is, in its ordinary and commonly
25      understood terms, "sugar" or "dried cane syrup."    Defendant unlawfully uses the term
26      "evaporated cane juice" on its labels despite the fact that the FDA has indicated that such a
27      practice is "false and misleading" to consumers and that any such use resulted in a product being
28      "misbranded."

17.     The principal display panel of Defendant's Coconut Dream Coconut Milk states, in part, that the product is "All Natural," despite the fact that the product contains the following artificial and unnatural ingredients: tricalcium phosphate, vitamin D2, and vitamin B12 (cyanocobalamine).

18.     Example 4 - The principal display panel of Defendant's Sensible Portions Sea Salt Garden Veggie Straws states:



19.     The principal display panel of Defendant's Sensible Portions Sea Salt Garden

1    Veggie Straws claims that it is "All Natural & No Preservatives." This product however contains

2    added coloring which precludes the use of the term "all natural." In addition, the product contains

3    more than 480 milligrams of sodium per 50 grams which precludes the use of a nutrient content

4    claim such as the 30% Less Fat" claim absent the disclosure statement mandated by law that the

5    Defendant has chosen to omit.

6        20.    Moreover, the Defendant makes unlawful implied nutrient content claims about its

7    Misbranded Food Products. For example, the Defendant claims in its Sensible Portions Healthy

8    Mission Statement that "Sensible Portions is the next generation of healthy foods" and indicates

9    that Sensible Portions products "meet the lifestyle demands of healthier eating in a fast paced

10   world." This violates 21 C.F.R. § 101.65 which has been adopted by California because terms

11   like healthy and healthier are implied nutrient content claims that cannot be made on products that

12   have the disqualifying high levels of nutrients like sodium that a product like Defendant's

13   Sensible Portions Sea Salt Garden Veggie Straws has.  In addition, 21 C.F.R. § 101.65 precludes

14   such implied nutrient content claims on products like Defendant's Sensible Portions Sea Salt

15   Garden Veggie Straws that lack certain minimal nutritional levels that the FDA has determined

16   healthy products should exhibit. In making such unlawful healthy claims, the Defendant

17   misleadingly states that its Sensible Portions products are "better for you" and a way to "start

18   eating better" despite the fact that products like its Defendant's Sensible Portions Sea Salt Garden

19   Veggie Straws have more sodium than other potato chips from leading brands and in fact exceed

20   regulatory sodium limits that most potato chips do not.

21       21.    Additionally, the Defendant's statements about "cancer prevention," "reduced risk

22   of heart disease," "menopausal symptoms" and "osteoporosis" when touting the purported health

23   benefits of products like its Defendant's Sensible Portions Sea Salt Garden Veggie Straws violate

24   21 C.F.R. § 101.14 which prohibits health claims in connection with products like Defendant's

25   Sensible Portions Sea Salt Garden Veggie Straws that contain high, disqualifying levels of

26   nutrients like sodium that the FDA has concluded place consumers at an elevated risk of a diet-

27   related disease or health-related condition.

28       22.    All of Defendant's Misbranded Food Products misbranded as a matter of federal

- 8 -
*Class Action Complaint*

1   and California law and cannot be sold because they are legally worthless.

2       23.     Identical federal and California laws regulate the content of labels on packaged

3   food.  The requirements of the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301, *et seq.*

4   ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic

5   Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law").  Under FDCA

6   section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if

7   it does not contain certain information on its label or its labeling.  21 U.S.C. § 343(a).

8       24.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

9   term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those

10  claims that might be technically true, but still misleading.  If any one single representation in the

11  labeling is misleading, the entire food is misbranded, and no other statement in the labeling can

12  cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking

13  and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

14  *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

15  that anyone was actually misled.

16      25.     In promoting the nutrient content and ingredients of its Misbranded Food Products

17  and the naturalness of its Misbranded Food Products, Defendant claims to understand the

18  importance of communicating responsibly about its products.  Nevertheless, Defendant has made,

19  and continues to make, false and deceptive claims on its Misbranded Food Products in violation

20  of federal and California laws that govern the types of representations that can be made on food

21  labels.

22      26.     In particular, in making its unlawful "No Trans Fat" and other nutrient content

23  claims (such as claims that its products are "enriched" with, contain "more" or are "good" or

24  "excellent" sources of vitamins or minerals) on certain of its Misbranded Food Products,

25  Defendant has violated nutrient content labeling regulations mandated by federal and California

26  law which require a disclosure of nutrients (fat, saturated fat, cholesterol, and sodium) present in

27  a food at a level that the FDA has concluded increases the risk of diet-related disease or health-

28  related condition whenever a nutrient content claim is made.

27.     In particular, in making its unlawful "evaporated cane juice" and/or "organic evaporated cane sugar juice" claims on certain of its Misbranded Food Products, Defendant has violated labeling regulations mandated by federal and California law by listing sugar and/or sugar cane syrups as "evaporated cane juice." According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR § 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup." Further, according to the FDA, sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." The FDA considers such representations to be false and misleading under section 403(a)(1) of the FDCA (21 U.S.C. § 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR § 102.5.

28.     In particular, in making its unlawful "All Natural" claims on certain of its Misbranded Food Products, Defendant has violated labeling regulations mandated by federal and California law that forbid the use of such labeling if the product contains any artificial or synthetic ingredient that has been included in or added to a food and that would not normally be expected in the food.

29.     Defendant has made, and continues to make, unlawful nutrient content, ingredient and all natural claims on the food labels of its Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded. Under federal and California law, Defendant's Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold. Defendant's false and misleading labeling practices stem from its global marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines.

## PARTIES

30.     Plaintiff Suzanne Smedt is a resident of Los Gatos, California who purchased Defendant's Misbranded Food Products in California during the four (4) years prior to the filing

1    of this Complaint (the "Class Period").

2         31.     Defendant The Hain Celestial Group, Inc. is a Delaware corporation with its

3    corporate headquarters and principal place of business in New York.

4         32.     Defendant sells its Misbranded Food Products to consumers through grocery and

5    other retail stores throughout California and the United States.

6                         **JURISDICTION AND VENUE**

7         33.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

8    because this is a class action in which:  (1) there are over 100 members in the proposed class;

9    (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

10    of the proposed class members exceed $5,000,000 in the aggregate.

11         34.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28

12    U.S.C. § 1331, because it arises under the laws of the United States.

13         35.     The Court has jurisdiction over the California claims alleged herein pursuant to 28

14    U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

15    United States Constitution.

16         36.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant

17    to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

18    between citizens of different states.

19         37.     The Court has personal jurisdiction over Defendant because a substantial portion

20    of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do

21    business in California, has sufficient minimum contacts with California, and otherwise

22    intentionally avails itself of the markets in California through the promotion, marketing and sale

23    of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under

24    traditional notions of fair play and substantial justice.

25         38.     Because a substantial part of the events or omissions giving rise to these claims

26    occurred in this District and because the Court has personal jurisdiction over Defendant, venue is

27    proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

28

**FACTUAL ALLEGATIONS**

A.   **Identical California And Federal Laws Regulate Food Labeling**

39.   Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

40.   Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

41.   In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, food products are misbranded under California Health & Safety Code § 110660 if its labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if its labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if its labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on its labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of its value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on its labeling.

B.   **FDA Enforcement History**

42.   In recent years the FDA has become increasingly concerned that food manufacturers were disregarding food labeling regulations. To address this concern, the FDA

elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

43.    In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point Of Purchase Food Labeling* ("2009 FOP Guidance") to address its concerns about front of package labels.  The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

> ... Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and its effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

44.    The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with

1    enforcement action where such FOP labeling or labeling systems are used in a manner that is

2    false or misleading.

3         45.    Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the

4    unlawful and misleading food labeling claims from its Misbranded Food Products.

5         46.    On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA

6    Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's

7    concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter

8    stated:

9         In the early 1990s, the Food and Drug Administration (FDA) and the food
          industry worked together to create a uniform national system of nutrition labeling,
10        which includes the now-iconic Nutrition Facts panel on most food packages. Our
          citizens appreciate that effort, and many use this nutrition information to make
11        food choices.  Today, ready access to reliable information about the calorie and
          nutrient content of food is even more important, given the prevalence of obesity
12        and diet-related diseases in the United States.  This need is highlighted by the
          announcement recently by the First Lady of a coordinated national campaign to
13        reduce the incidence of obesity among our citizens, particularly our children.
14

15        With that in mind, I have made improving the scientific accuracy and usefulness
          of food labeling one of my priorities as Commissioner of Food and Drugs.  The
16        latest focus in this area, of course, is on information provided on the principal
          display panel of food packages and commonly referred to as "front-of-pack"
17        labeling. The use of front-of-pack nutrition symbols and other claims has grown
          tremendously in recent years, and it is clear to me as a working mother that such
18        information can be helpful to busy shoppers who are often pressed for time in
          making their food selections. ...
19

20        As we move forward in those areas, I must note, however, that there is one area in
          which more progress is needed.  As you will recall, we recently expressed
21        concern, in a "Dear Industry" letter, about the number and variety of label claims
          that may not help consumers distinguish healthy food choices from less healthy
22        ones and, indeed, may be false or misleading.

23
          At that time, we urged food manufacturers to examine its product labels in the
24        context of the provisions of the Federal Food, Drug, and Cosmetic Act that
          prohibit false or misleading claims and restrict nutrient content claims to those
25        defined in FDA regulations.  As a result, some manufacturers have revised their
          labels to bring them into line with the goals of the Nutrition Labeling and
26        Education Act of 1990.  Unfortunately, however, we continue to see products
          marketed with labeling that violates established labeling standards.
27

28        To address these concerns, FDA is notifying a number of manufacturers that their

labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.
- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.
- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.
- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

47.     Notwithstanding the Open Letter, Defendant continued to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

48.     In addition to its guidance to industry, the FDA has sent warning letters to industry, including the Defendant and many of Defendant's peer food manufacturers for the same types of unlawful nutrient content claims described above.

49.     The Defendant had actual knowledge of the FDA's guidance and letters and, in fact, the Defendant's actions, one of the Defendant's unlawful product labels and the warning letter received by the Defendant were all part of the focus of the FDA's enforcement activities and such materials were posted at the FDA web site and incorporated into various FDA materials and presentations designed as guidance for the food industry.

50.     In these letters the FDA indicated that, as a result of the same type of claims utilized by Defendant, products were in "violation of the Federal Food, Drug, and Cosmetic Act ... and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

51.     The warning letters were hardly isolated as the FDA has issued over ten other warning letters to other companies for the same type of food labeling claims at issue in this case.

52.     The FDA stated that the agency not only expected companies that received warning letters to correct its labeling practices but also anticipated that other firms would examine its food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendant did not change the labels on its Misbranded Food Products in response to these warning letters.

53.     Defendant also continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims. Defendant ignored this guidance as well and continued to utilize unlawful claims on the labels of its Misbranded Food Products.  As such, the Defendant's Misbranded Food Products continue to run afoul of 2009 FOP Guidance as well as federal and California law.

54.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them. Defendant's Misbranded Food Products continue to run afoul of FDA guidance as well as federal

1   and California law, as Defendant continues to utilize unlawful claims on the labels of its

2   Misbranded Food Products.

3       55.   Plaintiff did not know, and had no reason to know, that the Defendant's

4   Misbranded Food Products were misbranded and bore food labeling claims despite failing to meet

5   the requirements to make those food labeling claims.

6       **C.   Defendant's Food Products Are Misbranded**

7       56.   Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a

8   nutrient in a food is a "nutrient content claim" that must be made in accordance with the

9   regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly

10  adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

11      57.   Nutrient content claims are claims about specific nutrients contained in a product.

12  They are typically made on the front of packaging in a font large enough to be read by the

13  average consumer. Because these claims are relied upon by consumers when making purchasing

14  decisions, the regulations govern what claims can be made in order to prevent misleading claims.

15      58.   Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied

16  nutrient content claims on labels of food products that are intended for sale for human

17  consumption. *See* 21 C.F.R. § 101.13.

18      59.   21 C.F.R. § 101.13 provides the general requirements for nutrient content claims,

19  which California has expressly adopted. *See* California Health & Safety Code § 110100. 21

20  C.F.R. § 101.13 requires that manufacturers include certain disclosures when a nutrient claim is

21  made and, at the same time, the product contains unhealthy components, such as fat, saturated fat,

22  cholesterol and sodium at levels that the FDA has concluded increases the risk of diet-related

23  disease or health related condition. It also sets forth the manner in which that disclosure must be

24  made, as follows:

25      (4)(i) The disclosure statement "See nutrition information for ___ content" shall
        be in easily legible boldface print or type, in distinct contrast to other printed or
26      graphic matter, and in a size no less than that required by §101.105(i) for the net
        quantity of contents statement, except where the size of the claim is less than two
27      times the required size of the net quantity of contents statement, in which case the
        disclosure statement shall be no less than one-half the size of the claim but no
28      smaller than one-sixteenth of an inch, unless the package complies with

§101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.

(ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of this section) or under a regulation in subpart D of this part (e.g., see §§101.54 and 101.62). If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel except for the panel that bears the nutrition information where it may be omitted.

60.     An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1). The Defendant's "No Trans Fat" claims and its claims that its products are "enriched" with, contain "more" or are "good" or "excellent" sources of vitamins and minerals are all examples of express nutrient content claims.

61.     An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat"). 21 C.F.R. § 101.13(b)(2)(i-ii).

### 1.     Defendant Makes Unlawful "No Trans Fat" And Other Nutrient Content Claims

62.     To appeal to consumer preferences, Defendant has repeatedly made unlawful nutrient content claims on products containing disqualifying levels of fat, saturated fat, cholesterol or sodium.  These nutrient content claims were unlawful because they have failed to include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law.

63.     21 C.F.R. § 101.13 (h)(l) provides that:

If a food ... contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily

consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

64.     Defendant repeatedly violates this provision. Defendant's Misbranded Food Products' packaging prominently makes "No Trans Fat" claims and other nutrient content claims such as claims that the products are "enriched" with, contain "more" or are "good" or "excellent" sources of vitamins or minerals despite disqualifying levels of total fat, saturated fat, sodium and or cholesterol that exceed the disclosure threshold stated in 21 C.F.R. § 101.13(h).[2] For example, the Defendant's Terra Stripes & Blues Sea Salt Potato Chips unlawfully makes a "No Trans Fat" nutrient content claim despite containing more than 14 grams of total fat per 50 grams. This level of total fat bars the making of a nutrient content claim without a disclosure statement.

65.     Similarly, Defendant's Coconut Dream Coconut Drink unlawfully claims that it contains "more" calcium and that it is "enriched" with calcium, "MCFAs" and Vitamins A, B12, and D despite having more than 4 grams of saturated fat per serving size. This level of saturated fat bars the making of a nutrient content claim without a disclosure statement.

66.     Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "No Trans Fat" and other nutrient content claims such as claims that the products are "enriched" with, contain "more" or are "good" or "excellent" sources of vitamins or minerals on its food products if its products contain disqualifying levels of fat, saturated fat, cholesterol, or sodium, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels. Similarly, pursuant to 21 C.F.R. § 101.65 Defendant is precluded from making any implied nutrient content claims like

---

[2] For a food, except a meal product as defined in §101.13(l) or a main dish product as defined in §101.13(m), these levels are more than 13.0 g of fat, 4.0 g of saturated fat, 60 mg of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g. If a food is a meal product as defined in §101.13(l), these levels are more than 26 g of fat, 8.0 g of saturated fat, 120 mg of cholesterol, or 960 mg of sodium per labeled serving. If a food is a main dish product as defined in §101.13(m), these levels are more than 19.5 g of fat, 6.0 g of saturated fat, 90 mg of cholesterol, or 720 mg of sodium per labeled serving.

1   "healthy" or "healthier" if its products contain disqualifying levels of fat, saturated fat,

2   cholesterol, or sodium or fail to meet certain minimal nutritional threshold levels.

3       67.    These regulations are intended to ensure that consumers are not misled to believe

4   that a product that claims, for instance, to be low in trans fat or high in vitamins and minerals, but

5   actually has other unhealthy fat, saturated fat, cholesterol or sodium levels, is a healthy choice,

6   because of the lack of trans fats or the presence of vitamins and minerals.

7       68.    Nevertheless, Defendant's product labels state that the products contain "No Trans

8   Fat" and make other nutrient content claims such as claims that the products are "enriched" with,

9   contain "more" or are "good" or "excellent" sources of vitamins or minerals without such a

10   disclosure even though its Misbranded Food Products contain fat, saturated fat, cholesterol, or

11   sodium in excess of the levels that the FDA has concluded increases the risk of a diet-related

12   disease or health related condition.  The Defendants also make implied nutrient content claims

13   like "healthy" or "healthier" about its Misbranded Food Products even though those products

14   contain disqualifying levels of fat, saturated fat, cholesterol, or sodium and/or fail to meet certain

15   minimal nutritional threshold levels.

16       69.    Based on the fat, saturated fat, cholesterol and sodium content of Defendant's

17   products, pursuant to federal and California law, Defendant must not make any health or implied

18   nutrient content health claims at all or its Products will be misbranded. Defendant must also

19   include a warning statement adjacent to any trans fat or other nutrient claim that informs

20   consumers of the high levels of fat, saturated fat, cholesterol or sodium.  No such disclosure

21   statement currently exists on Defendant's Misbranded Food Products.  Therefore, they are

22   misbranded as a matter of federal and California law and cannot be sold because they are legally

23   worthless.

24       70.    In addition to its guidance to industry, the FDA has sent warning letters to the

25   industry, including Defendant's subsidiary Spectrum Organic Products, Inc. and many of

26   Defendant's peer food manufacturers, for the same types of unlawful no trans fat or 0 grams trans

27   fat nutrient content claims described above. In these letters the FDA indicated that as a result of

28   the same type of no trans fat claims utilized by Defendant, products were in "violation of the

Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

71.     In a February 22, 2010 to Spectrum Organic Products, Inc., a company within the Defendant's network of subsidiaries, received a warning letter from the FDA.  The letter states, in relevant part:

> In addition, your "Organic All Vegetable Shortening" product is misbranded because your product's label bears a nutrient content claim but fails to bear the disclosure statement required by 21 CFR 101.13(h). Your product bears the phrase "0 Grams Trans Fat" in two different locations on the principal display panel of the product label. The phrase "0 Grams Trans Fat" meets the definition of a nutrient content claim because it characterizes the product's level of trans fat, which is a nutrient of the type required to be in nutrition labeling (21 CFR 101.13(b)). The Nutrition Facts panel declares the nutrient value of 6 g saturated fat per serving (1 Tbsp). A food that bears a nutrient content claim that contains more than 4 g of saturated fat per serving must bear a disclosure statement on the label (immediately adjacent to the claim) referring the consumer to nutrition information for that nutrient, e.g., "See nutrition information for saturated fat content," as required by 21 CFR 101.13(h)(1); however, the label of your product fails to bear the required disclosure statement.

72.     The warning letters were hardly isolated, as the FDA has issued at least nine other warning letters to other companies for the same type of unlawful nutrient content claims at issue in this case.

73.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful "No Trans Fat" nutrient content claims and other nutrient content claims such as claims that the products are "enriched" with, contain "more" or are "good" or "excellent" sources of vitamins or minerals without meeting the requirements to make them.

74.     Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Food Products were misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff was equally unaware that Defendant's Misbranded Food Products contained one or more nutrients like total fat or saturated fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet

related." Plaintiff and members of the Class who purchased the Misbranded Food Products paid an unwarranted premium for these products.

### 2. Defendant Makes Unlawful "Evaporated Cane Juice" and "Organic Evaporated Cane Sugar Juice" Claims

75.    In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

76.    An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d).

77.    The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

78.    Ignoring these regulations and guidance, Defendant mislabeled its Misbranded Food Products. For example, the back panel of Defendant's Coconut Dream Coconut Drink lists "evaporated cane juice" as an ingredient.   In listing "evaporated cane juice" as an ingredient, Defendant has made false and misleading misrepresentations in violation of 21 U.S.C. § 343(a)(1) because it has failed to reveal the basic nature of the food and its characterizing properties. Specifically, Defendant has failed to call dried cane syrup or sugar by its common or usual name, as required by 21 C.F.R. § 102.5.

79.    Defendant has also made the same illegal claims on other food products and its websites and advertising in violation of federal and California law.

80.    In the above-referenced 2009 Evaporated Cane Juice Guidance, issued in October 2009, the FDA stated, in pertinent part, as follows:

> . . . . .
> Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130).  Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar).
> . . . . .

1

2    ...the common or usual name for the solid or dried form of cane syrup is "dried
     cane syrup." Sweeteners derived from sugar cane syrup should not be listed in
3    the ingredient declaration by names which suggest that the ingredients are juice,
     such as "evaporated cane juice." FDA considers such representations to be false
4    and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because
     they fail to reveal the basic nature of the food and its characterizing properties
5    (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5.

6    http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/Guidance
     Documents/FoodLabelingNutrition/ucm181491.htm

7

8       81.    On November 15, 2004, prior to its issuance of the aforementioned industry

9   guidance, the FDA sent a warning letter to Upscale Foods, Inc., in which it stated that "[y]our

10  product label declares 'organic evaporated cane juice' in the ingredient list; however, the

11  common or usual name for this ingredient is sugar." Likewise, on April 3, 2008, the FDA sent a

12  warning letter to Hato Portero Farm, Inc., in which it stated "'evaporated sugar cane juice' is not

13  a common or usual name. It is your responsibility to determine what this ingredient is (i.e.,

14  whether it is sucrose or another sweetener) and declare its common or usual name (see 21 CFR §

15  101.4(b)(20)).

16      82.    A reasonable consumer would expect that when Defendant lists the ingredients on

17  its products, the product's ingredients are given their common or usual name as defined by the

18  federal government and its agencies.

19      83.    Plaintiff did not know, and had no reason to know, that Defendant's Misbranded

20  Food Products were misbranded and listed "evaporated cane juice" and "organic evaporated cane

21  sugar juice" as an ingredient despite FDA regulations requiring the use of the ingredient's

22  common or usual name.

23      84.    Consumers are thus misled into purchasing Defendant's products with false and

24  misleading ingredient names, which do not describe the basic nature of the food or its

25  characterizing properties or ingredients and which are "confusingly similar to the name of"

26  another food, i.e., juice, "... not reasonably encompassed within the same name," as provided in

27  21 C.F.R. § 102.5(a).

28

85.     Defendant's products are in this respect misbranded under federal and California law.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

### 3.     Defendant Makes Unlawful "All Natural" Claims

86.     Section 403(a) of the FDCA and California's Sherman Law prohibit food manufacturers from using labels that contain the terms "natural" and "all natural" when they contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

87.     The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic...has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6, 1993.

88.     21 C.F.R. § 70.3(f) makes clear that "where a food substance such as beet juice is deliberately used as a color, as in pink lemonade, it is a color additive." Similarly, any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.  The FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

89.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food. Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.

90.     The FDA has sent out numerous warning letters to companies in which it has addressed "All Natural" claims.  In these letters, the FDA has informed the receiving companies that their products labeled "All Natural" were misbranded where they contained synthetic and artificial ingredients.

91.     For example, on August 16, 2001, the FDA sent a warning letter to Oak Tree Farm Dairy, Inc. ("Oak Tree warning letter").  The letter "found serious violations" of the Federal

1    Food, Drug and Cosmetic Act and Title 21, Code of Federal Regulations, Part 101 – Food

2    Labeling (21 CFR 101), and stated in pertinent part:

3        The term "all natural" on the "OAKTREE ALL NATURAL LEMONADE" label
         is inappropriate because the product contains potassium sorbate.  Although FDA
4        has not established a regulatory definition for "natural," we discussed its use in the
         preamble to the food labeling final regulations (58 Federal Register 2407, January
5        6, 1993, copy enclosed).   FDA's policy regarding the use of "natural," means
         nothing artificial or synthetic has been included in, or has been added to, a food
6        that would not normally be expected to be in the food.  The same comment applies
         to use of the terms "100 % NATURAL" and "ALL NATURAL" on the
7        "OAKTREE REAL BREWED ICED TEA" label because it contains citric acid.
8
9        http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm

10       92.     Similarly, on November 16, 2011, the FDA sent a warning letter to Alexia Foods,

11   Inc., informing Alexia of its failure to comply with the requirements of the Federal Food, Drug

12   and Cosmetic Act and Title 21, Code of Federal Regulations, Part 101 – Food Labeling (21 CFR

13   101) ("Alexia Warning Letter"). The Alexia Warning Letter stated, in pertinent part:

14       The U.S. Food and Drug Administration (FDA) has reviewed the labels for your
         Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms products.
15        Based on our review, we have concluded that these products are in violation of
         the Federal Food, Drug, and Cosmetic Act (the Act).  You can find copies of the
16       Act   and   the   FDA   regulations   through   links   in   FDA's   home   page
         at http://www.fda.gov.
17
18       Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product
         is misbranded within the meaning of section 403(a)(1) of the Act [21 U.S.C.
19       343(a)(1)], which states that a food shall be deemed to be misbranded if its
         labeling is false or misleading in any particular.  The phrase "All Natural" appears
20       at the top of the principal display panel on the label.  FDA considers use of the
         term "natural" on a food label to be truthful and non-misleading when "nothing
21       artificial or synthetic...has been included in, or has been added to, a food that
         would not normally be expected to be in the food." [58 FR 2302, 2407, January 6,
22       1993].
23
24       Your Alexia brand Roasted Red Potatoes & Baby Portabella Mushrooms product
         contains disodium dihydrogen pyrophosphate, which is a synthetic chemical
25       preservative.  Because your products contain this synthetic ingredient, the use of
         the claim "All Natural" on this product label is false and misleading, and therefore
26       your product is misbranded under section 403(a)(1) of the Act.
27
         We note that your Alexia brand products market a number of food products with
28       the "All Natural" statement on the label.  We recommend that you review all of

1   your product labels to be consistent with our policy to avoid additional
2   misbranding of your food products.

3   This letter is not intended to be an all-inclusive review of your products and their
    labeling. It is your responsibility to ensure that all of your products and labeling
4   comply with the Act and its implementing regulations. You should take prompt
    action to correct the violations cited in this letter. Failure to do so may result in
5   enforcement action without further notice. Such action may include, but is not
    limited to, seizure or injunction.
6

7   http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm

8

9        93.   Defendant knew or should have known of these warning letters and other similar

10  ones. Despite FDA's numerous warnings to industry, Defendant has continued to sell products

11  labeled "All Natural" that in fact contain artificial and synthetic ingredients and added coloring.

12  Seeking to profit from consumers' desire for natural food products, Defendant has falsely

13  misrepresented its products as "All Natural."

14       94.   For example, on the principal display panel of its Coconut Dream Coconut Drink,

15  Defendant claims that its product is "All Natural." However, the product contains, among other

16  ingredients, cocoa (dutch process), potassium citrate, vitamin a palmitate, vitamin d2 and d-alpha-

17  tocopherol.

18       95.   Because the aforementioned ingredients are artificial or synthetic, Defendant has

19  unlawfully labeled its Coconut Dream Coconut Drink as "All Natural" when it is not.

20       96.   Defendant's "all natural" and "only natural" labeling practices also violate FDA

21  Compliance Guide CPG Sec. 587.100, which states: [t]he use of the words "food color added,"

22  "natural color," or similar words containing the term "food" or "natural" may be erroneously

23  interpreted to mean the color is a naturally occurring constituent in the food. Since all added

24  colors result in an artificially colored food, we would object to the declaration of any added color

25  as "food" or "natural." Likewise, California Health & Safety Code § 110740 prohibits the use of

26  artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are

27  adequately disclosed on the labeling.

28

- 26 -
*Class Action Complaint*

97.    Defendant violated these provisions when it labeled its products as being all natural despite the fact that they contained unnatural coloring. For example, Defendant's Sensible Portions Sea Salt Garden Veggie Straws were labeled "All Natural" despite containing added color.

98.    Defendant has also made the same false, misleading and illegal claims on other food products and on its websites and advertising in violation of federal and California law.

99.    A reasonable consumer would expect that when Defendant labels its products as "All Natural," the product's ingredients are "natural" as defined by the federal government and its agencies.  A reasonable consumer would also expect that when Defendant labels its products as "All Natural," the product ingredients are "natural" according to the common use of that word.  A reasonable consumer would, furthermore, expect that "All Natural" products do not contain synthetic, artificial or excessively processed ingredients.

100.    Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Food Products were misbranded, and bore claims of "All Natural" despite their failure to meet the requirements necessary to make this claim.

101.    Consumers are thus misled into purchasing Defendant's products with synthetic and artificial ingredients that are not "All Natural" as falsely represented on their labeling.

102.    Defendant's products are in this respect misbranded under federal and California law.  Misbranded products cannot be legally sold and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**D.    Defendant has Violated California Law**

103.    Defendant has manufactured, advertised, distributed, and sold products that are misbranded under California law.   Misbranded products cannot be legally manufactured, advertised, distributed, sold or held, and are legally worthless as a matter of law.

104.    Defendant has violated California Health & Safety Code §§ 109885 which 110390 which make it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

105.   Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

106.   Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

107.   Defendant Misbranded Food Products are misbranded under California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways.

108.   Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto.

109.   Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

110.   Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on its labeling either are missing or not sufficiently conspicuous.

111.   Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

112.   Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and its labels fail to bear such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

113.   Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

114.    Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

115.    Defendant has violated the standard set by 21 C.F.R. § 101.13(h), which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the nutritional information required by law.

### E.    <u>**Plaintiff Purchased Defendant's Misbranded Food Products**</u>

116.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

117.    Plaintiff purchased Defendant's Misbranded Food Products on occasions during the Class Period. Plaintiff's purchases included Defendant's Coconut Dream Coconut Drink, Terra Stripes & Blues Sea Salt Potato Chips, Terra Exotic Vegetable Mediterranean Chips and Sensible Portions Sea Salt Garden Veggie Straws.  Plaintiff purchased the following:

Garden Veggie Straws











1    Terra Exotic Vegetable Chips, Stripes & Blues, Sea Salt

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Class Action Complaint*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



TERRA RED BLISS®
TERRA POTPOURRI®
TERRA FRITES®
TERRA KETTLE BLENDS
TERRA SWEETS AND BEETS
TERRA UNSALTED POTATO CHIPS

INGREDIENTS: A SEASONAL MIX OF ROOT VEGETABLES
(SWEET POTATO, BLUE POTATO, BEETS), CANOLA OIL
AND/OR SAFFLOWER OIL AND/OR SUNFLOWER OIL,
BEET JUICE CONCENTRATE (FOR COLOR), SEA SALT.

MANUFACTURED FOR DISTRIBUTION BY TERRA CHIPS
A DIVISION OF THE HAIN CELESTIAL GROUP, INC.
MELVILLE, NY 11747 USA
TERRA CHIPS® AND TERRA® ARE TRADEMARKS
OWNED BY THE HAIN CELESTIAL GROUP, INC.
©2006 THE HAIN CELESTIAL GROUP, INC.
MADE IN THE USA

1  Terra Exotic Vegetable Chips, Mediterranean



**TERRA® SWEET POW™ CHIPS**

**TERRA® SWEETS & CARROTS™ VEGETABLE CHIPS**

**TERRA® SWEETS & BEETS® VEGETABLE CHIPS**

**TERRA® TARO CHIPS**

**TERRA STIX® SNACKS**

**TERRA BLUES® POTATO CHIPS**

**TERRA POTPOURRI® POTATO CHIPS**

**INGREDIENTS:** A SEASONAL MIX OF ROOT VEGETABLES (TARO, SWEET POTATO, BATATA, YUCA, PARSNIP), EXPELLER PRESSED CANOLA OIL AND/OR SAFFLOWER OIL AND/OR SUNFLOWER OIL, SEASONING (WHEY [MILK], SEA SALT, ORGANIC EVAPORATED CANE SUGAR JUICE, SPICES, ONION POWDER, GARLIC POWDER, AUTOLYZED YEAST EXTRACT, NATURAL OLIVE OIL FLAVOR, CITRIC ACID, VINEGAR POWDER [MALTODEXTRIN, DISTILLED VINEGAR SOLIDS], SAFFLOWER OIL, OIL OF LEMON, TOASTED SESAME OIL), BEET JUICE CONCENTRATE (FOR COLOR).

**CONTAINS: MILK.**

**MANUFACTURED FOR DISTRIBUTION BY:**
TERRA CHIPS, A DIVISION OF
THE HAIN CELESTIAL GROUP, INC.
MELVILLE, NY 11747 USA
©2011 THE HAIN CELESTIAL GROUP, INC.

MADE IN THE USA

Organic Flax Oil



Coconut Dream Original Coconut Drink



118. Plaintiff read the labels on Defendant's Misbranded Food Products before purchasing them including the "No Trans Fat" and other nutrient content claims, the "All Natural" label claims, and the list of ingredients referencing "evaporated cane juice" and "organic evaporated cane sugar juice" before purchasing them.

119. Plaintiff relied on Defendant's package labeling including (1) the "No Trans Fat" nutrient content claims and the nutrient content claims that the products were "enriched" with, contained "more" or were "good" or "excellent" sources of vitamins or minerals; (2) the "All Natural" label claims and (3) the ingredients list referencing "evaporated cane juice" and "organic evaporated cane sugar juice" and based and justified the decision to purchase Defendant's products in substantial part on Defendant's package labeling.

120. At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had Plaintiff known the truth about them.

121. At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's claims were unlawful and unauthorized as set forth herein, and would not have bought the products absent the unlawful claims.

122. As a result of Defendant unlawful claims, Plaintiff and thousands of others in California purchased the Misbranded Food Products at issue.

123. Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

124. A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's Misbranded Food Products had Plaintiff known they were not capable of being legally sold or held.

**CLASS ACTION ALLEGATIONS**

125.   Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the California who, within the last four years, purchased Defendant's products: (1) labeled with the ingredient "Evaporated Cane Juice" or "Organic Evaporated Cane Sugar Juice;" (2) labeled "All Natural" but which contain artificial ingredients, flavorings, added coloring, and/or chemical preservatives; and/or (3) labeled with a "No Trans Fat" or other nutrient content claim but which contain fat, saturated fat, sodium or cholesterol in excess of the disqualifying amounts stated in 21 C.F.R. § 101.13(h)[34] (the "Class").

126.   The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

127.   This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

128.   <u>Numerosity</u>: Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

---

[3] For a food, except a meal product as defined in §101.13(l) or a main dish product as defined in §101.13(m), these levels are more than 13.0 g of fat, 4.0 g of saturated fat, 60 mg of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g. If a food is a meal product as defined in §101.13(l), these levels are more than 26 g of fat, 8.0 g of saturated fat, 120 mg of cholesterol, or 960 mg of sodium per labeled serving. If a food is a main dish product as defined in §101.13(m), these levels are more than 19.5 g of fat, 6.0 g of saturated fat, 90 mg of cholesterol, or 720 mg of sodium per labeled serving.

[4] The Code of Federal Regulation requires that nutrient content claims be made using a defined term or an approved synonym. For an express nutrient content claim these terms are **Free:** No, Zero, Without, Trivial source of, Negligible source of, Dietarily insignificant source of, Nonfat (for fat claims), Skim (for fat claims on milk products); **Low:** Low in, Little, Contains a small amount of, Low source of; **Reduced, Less or Fewer:** Lower, Lower in; **Good Source:** Contains, Provides; **High:** Rich in, Excellent source of; **More:** Fortified, Enriched, Added, Extra, Plus, **High Potency, Light or Lite, Lean, Extra Lean.** The term **Healthy** is an implied nutrient content claim as are the related terms (e.g., health, healthful, healthfully, healthfulness, healthier, healthiest, healthily, healthiness.

129.   <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

    a.      Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Food Products sold to consumers;

    b.      Whether the food products at issue were misbranded as a matter of law;

    c.      Whether Defendant made unlawful and misleading nutrient content, ingredient or all natural claims with respect to its food products sold to consumers;

    d.      Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, and the Sherman Law;

    e.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

    f.      Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

    g.      Whether Defendant were unjustly enriched by its deceptive practices.

130.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

131.   <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to

1    the interests of the Class members.  Plaintiff has retained highly competent and experienced class

2    action attorneys to represent Plaintiff's interests and those of the members of the Class.  Plaintiff

3    and Plaintiff's counsel have the necessary financial resources to adequately and vigorously

4    litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to

5    the Class members and will diligently discharge those duties by vigorously seeking the maximum

6    possible recovery for the Class.

7        132.   Superiority:   There is no plain, speedy, or adequate remedy other than by

8    maintenance of this class action.  The prosecution of individual remedies by members of the

9    Class will tend to establish inconsistent standards of conduct for Defendant and result in the

10   impairment of Class members' rights and the disposition of their interests through actions to

11   which they were not parties.  Class action treatment will permit a large number of similarly

12   situated persons to prosecute their common claims in a single forum simultaneously, efficiently

13   and without the unnecessary duplication of effort and expense that numerous individual actions

14   would engender.  Further, as the damages suffered by individual members of the Class may be

15   relatively small, the expense and burden of individual litigation would make it difficult or

16   impossible for individual members of the Class to redress the wrongs done to them, while an

17   important public interest will be served by addressing the matter as a class action.   Class

18   treatment of common questions of law and fact would also be superior to multiple individual

19   actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

20   the litigants, and will promote consistency and efficiency of adjudication.

21       133.   The prerequisites to maintaining a class action for injunctive or equitable relief

22   pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

23   generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

24   with respect to the Class as a whole.

25       134.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

26   are met as questions of law or fact common to class members predominate over any questions

27   affecting only individual members, and a class action is superior to other available methods for

28   fairly and efficiently adjudicating the controversy.

135.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

136.   Plaintiff incorporates by reference each allegation set forth above.

137.   Defendant's conduct constitutes unlawful business acts and practices.

138.   Defendant sold Misbranded Food Products in California and the United States during the Class Period.

139.   Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

140.   Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

141.   Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

142.   Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

143.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

144.   As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

145.   Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

146.   As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**Unfair Business Acts and Practices**

147.   Plaintiff incorporates by reference each allegation set forth above.

148.   Defendant's conduct as set forth herein constitutes unfair business acts and practices.

149.   Defendant sold Misbranded Food Products in California and the United States during the Class Period.

150.   Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

151.   Defendant's deceptive marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

152.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

153.   Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly

marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

154.   The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefore.   Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.   Plaintiff and the Class paid a premium price for the Misbranded Food Products.

155.   As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**THIRD CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**<u>Fraudulent Business Acts and Practices</u>**

156.   Plaintiff incorporates by reference each allegation set forth above.

157.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

158.   Defendant sold Misbranded Food Products in California and the United States during the Class Period.

159.   Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of legal possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.   Defendant has engaged in fraudulent business acts and practices.

160.   Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

161.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

162.   As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

163.   Plaintiff incorporates by reference each allegation set forth above.

164.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendant.

165.   Defendant sold Misbranded Food Products in California and the United States during the Class Period.

166.   Defendant engaged in a scheme of offering Defendant Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff and the Class that were intended to reach members of the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

167.   In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials,

statements that misleadingly and deceptively represented the composition and the nature of Defendant's Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

168. Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

169. As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

170. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Untrue Advertising</u>

171. Plaintiff incorporates by reference each allegation set forth above.

172. Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

173. Defendant sold Misbranded Food Products in California and the United States during the Class Period.

174. Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements

were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

175.   In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

176.   Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

177.   As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

178.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

179.   Plaintiff incorporates by reference each allegation set forth above.

180.   This cause of action is brought pursuant to the CLRA.  This cause of action does not currently seek monetary damages and is limited solely to injunctive relief.  Plaintiff intends to

1    amend this Complaint to seek damages in accordance with the CLRA after providing Defendant

2    with notice pursuant to Cal. Civ. Code § 1782.

3         181.    At the time of any amendment seeking damages under the CLRA, Plaintiff will

4    demonstrate that the violations of the CLRA by Defendant were willful, oppressive and

5    fraudulent, thus supporting an award of punitive damages.

6         182.    Consequently, Plaintiff and the Class will be entitled to actual and punitive

7    damages against Defendant for its violations of the CLRA.   In addition, pursuant to Cal. Civ.

8    Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-

9    described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of

10   costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court

11   pursuant to Cal. Civ. Code § 1780.

12        183.    Defendant's actions, representations and conduct have violated, and continue to

13   violate the CLRA, because they extend to transactions that are intended to result, or which have

14   resulted, in the sale of goods to consumers.

15        184.    Defendant sold Misbranded Food Products in California during the Class Period.

16        185.    Plaintiff and members of the Class are "consumers" as that term is defined by the

17   CLRA in Cal. Civ. Code §1761(d).

18        186.    Defendant's Misbranded Food Products were and are "goods" within the meaning

19   of Cal. Civ. Code §1761(a).

20        187.    By engaging in the conduct set forth herein, Defendant violated and continues to

21   violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods

22   of competition and unfair or fraudulent acts or practices in that they misrepresent the particular

23   ingredients, characteristics, uses, benefits and quantities of the goods.

24        188.    By engaging in the conduct set forth herein, Defendant violated and continues to

25   violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods

26   of competition and unfair or fraudulent acts or practices in that it misrepresents the particular

27   standard, quality or grade of the goods.

28

189.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

190.   By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

191.   Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).   If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

192.   Plaintiff incorporates by reference each allegation set forth above.

193.   As a result of Defendant's unlawful, fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Misbranded Food Products Defendant was enriched at the expense of Plaintiff and the Class.

194.   Defendant sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.   Plaintiff and the Class paid a premium price for the Misbranded Food Products.

195.   It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits they received from Plaintiff and the Class, in light of the fact that the products were not what Defendant purported them to be.   Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the products at issue.

1    196.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class

2    have suffered damages in an amount to be proven at trial.

3                            **EIGHTH CAUSE OF ACTION**
                    **Beverly-Song Act (Cal. Civ. Code § 1790, *et seq.*)**
4

5    197.    Plaintiff incorporates by reference each allegation set forth above.

6    198.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code §

7    1791(b).

8    199.    Defendant is a "manufacturer" and "seller" as defined by Cal. Civ. Code § 1791(j)

9    & (l).

10    200.    Defendant's food products are "consumables" as defined by Cal. Civ. Code §

11    1791(d).

12    201.    Defendant's nutrient content, ingredient and all natural claims constitute "express

13    warranties" as defined by Cal. Civ. Code § 1791.2.

14    202.    Defendant, through its package labels, creates express warranties by making

15    affirmations of fact and promising that its Misbranded Food Products comply with food labeling

16    regulations under federal and California law.

17    203.    Despite Defendant's express warranties regarding its food products, its labeling

18    does not comply with food labeling regulations under federal and California law.

19    204.    Defendant breached its express warranties regarding its Misbranded Food Products

20    in violation of Cal. Civ. Code § 1790, *et seq.*

21    205.    Defendant sold Plaintiff and members of the Class Defendant's Misbranded Food

22    Products that were not capable of being sold or held legally and which were legally worthless.

23    Plaintiff and the Class paid a premium price for the Misbranded Food Products.

24    206.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class

25    have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

26    207.    Defendant's breaches of warranty were willful, warranting the recovery of civil

27    penalties pursuant to Cal. Civ. Code § 1794.

28

### NINTH CAUSE OF ACTION
**Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)**

208.   Plaintiff incorporates by reference each allegation set forth above.

209.   Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

210.   Defendant is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) & (5).

211.   Defendant's food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

212.   Defendant's nutrient content, ingredients and all natural claims constitute "express warranties."

213.   Defendant, through its package labels, creates express warranties by making affirmations of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

214.   Despite Defendant's express warranties regarding its food products, its labeling does not comply with food labeling regulations under federal and California law.

215.   Defendant breached its express warranties regarding its Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

216.   Defendant sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

217.   As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of Plaintiff's claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

A.      For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.      For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

C.      For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to manufacture, label, market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.      For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding punitive damages;

G.      For an order awarding pre-and post-judgment interest; and

H.      For an order providing such further relief as this Court deems proper.

Dated: June 12, 2012                Respectfully submitted,


Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA  95008
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorney for Plaintiff*