1  Ben F. Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  (408) 429-6506
   pgore@prattattorneys.com
4
   Charles Barrett
5  CHARLES BARRETT, P.C.
   6518 Highway 100
6  Suite 210
   Nashville, TN 37205
7  (615) 515-3393
   charles@cfbfirm.com
8
   *Attorney for Plaintiff*
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          SAN JOSE DIVISION

13

14
   SUZANNE SMEDT, individually and on          Case No. 5:12-cv-03029-EJD
15 behalf of all others similarly situated,
                                               **SECOND AMENDED CLASS ACTION**
16              Plaintiff,                      **AND REPRESENTATIVE ACTION**
                                               **COMPLAINT FOR DAMAGES,**
17 v.                                          **EQUITABLE AND INJUNCTIVE**
                                               **RELIEF**
18 THE HAIN CELESTIAL GROUP, INC.,
                                               <u>JURY TRIAL DEMANDED</u>
19              Defendant.

20

21         Plaintiff Suzanne Smedt ("Plaintiff") through her undersigned attorneys, brings this

22 lawsuit against The Hain Celestial Group, Inc. ("Defendant") as to Plaintiff's own acts upon

23 personal knowledge, and as to all other matters upon information and belief.

24                              **DEFINITIONS**

25         1.      "Class Period" is June 12, 2008 to the present.

26         2.      "Purchased Products" are the 3 products that Plaintiff purchased during the Class

27 Period:  (1) Terra Stripes & Blues Sea Salt Potato Chips, (2) Coconut Dream Coconut Drink

28 (Original), and (3) Sensible Portions Sea Salt Garden Veggie Straws.  Pictures of the Purchased

SECOND AMENDED CLASS ACTION COMPLAINT                                            1
CASE NO. 12-CV-03029 (EJD)

Products are attached as Exhibits 1 - 3 and specific descriptions of the relevant label representations are included below.

3.    "Substantially Similar Products" are the Defendant's products listed below.  These products make the exact same representations, violate the exact same regulations in the same manner, and are essentially the exact same products, except for flavor, as the Purchased Products as follows:

<u>Similar to Terra Stripes & Blues Sea Salt Potato Chips</u>
Terra Exotic Harvest Sea Salt Chips ("No Trans Fat")
Terra Exotic Harvest Sweet Onion Chips ("No Trans Fat")
Terra Stripes & Blues Gourmet Barbeque Chips ("No Trans Fat")
Terra Sweets & Beets Chips ("No Trans Fat")
Terra Sweets & Carrots Chips ("No Trans Fat")
Terra Blues Potato Chips ("No Trans Fat")
Terra Kettles Sea Salt Krinkle Cut Potato Chips ("No Trans Fat")

<u>Similar to Coconut Dream Coconut Drink (Original)</u>
Coconut Dream Coconut Drink Vanilla ("evaporated cane juice")
Coconut Dream Coconut Drink Enriched Vanilla ("evaporated cane juice")

<u>Similar to Sensible Portions Sea Salt Garden Veggie Straws</u>
Sensible Portions Rosemary Olive Oil Garden Veggie Straws ("All Natural")
Sensible Portions Lightly Salted Garden Veggie Straws ("All Natural")

4.    Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other of Defendant's products had labels which violate the same provisions of the Sherman Law and have the same label representations as the Purchased Products.

## SUMMARY OF THE CASE

### *Misbranding*

5.    Plaintiff's case has two distinct facets.  First, the "misbranding" part.  This case seeks to recover for the injuries suffered by the Plaintiff and the Class as a direct result of the Defendant's unlawful sale of misbranded food products. Defendant packaged and labeled its food products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that act.  These violations render Defendant's food products "misbranded."  Defendant's actions violate the unlawful prong of California's

1   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal

2   Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA").

3        6.     Under California law, misbranded food products cannot be legally sold or

4   possessed, have no economic value and are legally worthless.  Indeed, the sale or possession of

5   misbranded food products is a criminal act in California.

6        7.     By selling such illegal products to the unsuspecting Plaintiff, the Defendant

7   profited at the Plaintiff's expense and unlawfully deprived Plaintiff of the money she paid to

8   purchase food products that were illegal to sell, possess or resell and had no economic value.

9        8.     California law is clear that reliance by Plaintiff or the Class members is not a

10   necessary element for a plaintiff to prevail under the UCL unlawful prong or the CLRA for a

11   claim based on the sale of an illegal product.

12        9.     Thus, the unlawful sale of a misbranded product that was illegal to sell or possess

13   – standing alone without any allegations of deception by Defendant, or review of or reliance on

14   the labels by Plaintiff – gives rise to causes of action under the UCL and CLRA.  In short,

15   Defendant's injury causing unlawful conduct in selling an illegal product to an unsuspecting

16   consumer is the only necessary element needed for UCL and CLRA liability. All Plaintiff needs

17   to show is that she bought an unlawful product and was injured as a result. This claim does not

18   sound in fraud. In the present case, Plaintiff was injured by the Defendant's illegal sale of its

19   misbranded Purchased Products. Plaintiff paid money to purchase an illegal product that was

20   worthless and could not be legally sold or possessed. Plaintiff was also unwittingly placed in a

21   worse legal situation as a result of Defendant's unlawful sale of an illegal product to her. Plaintiff

22   would not have purchased Defendant's Purchased Products had she known that the products were

23   illegal and could not be lawfully possessed. No reasonable consumer would purchase such a

24   product. The Class suffered the same injuries as Plaintiff due to the Class' purchase of the

25   Purchased Products.

26        10.     Defendant has violated the Sherman Law § 110760, which makes it unlawful for

27   any person to manufacture, sell, deliver, hold or offer for sale any food that is misbranded. As

28   discussed below, the illegal sale of a misbranded product to a consumer results in an independent

1  violation of the unlawful prong of the UCL and CLRA that is separate and apart from the

2  underlying unlawful labeling practice that resulted in the product being misbranded. While not

3  required, the Plaintiff relied on the fact that the Defendant's Purchased Products were legal and

4  that its labeling and label claims were legal.

5       11.    Due to Defendant's misbranding of the Purchased Products, Plaintiff lost money

6  by purchasing unlawful products.

7  ***Misleading and Deceptive***

8       12.    Second, the "misleading" part. In addition to being misbranded under the Sherman

9  Law, each Purchased Product has label statements that are misleading, deceptive and fraudulent.

10  These label statements are (1) "*No Trans Fat*" on Terra Stripes & Blues Sea Salt Potato Chips (2)

11  "*Evaporated Cane Juice*" on Coconut Dream Coconut Drink (Original), and (3) "*All Natural*" on

12  Sensible Portions Sea Salt Garden Veggie Straws.

13       13.    Prior to purchase, Plaintiff reviewed the illegal "No Trans Fat," "Evaporated Cane

14  Juice," and "All Natural" statements on the labels of each respective Purchased Product,

15  reasonably relied, in substantial part, on these misleading statements, and was thereby misled in

16  deciding to buy the Purchased Products.  Plaintiff was deceived into purchasing the Purchased

17  Products in substantial part because of these label statements and because of these statements

18  believed that the Purchased Products were healthier than other similar products.

19       14.    Defendant also misled Plaintiff to believe that the Purchased Products were legal

20  to purchase and possess. Had Plaintiff known that the chips were misbranded she would not have

21  bought Defendant's Purchased Products. Plaintiff relied (a) on the Defendant's explicit

22  representations that its products contained "No Trans Fat," "Evaporated Cane Juice," and were

23  "All Natural" and were thus healthier than other similar products lacking such statements and (b)

24  the Defendant's implicit representation based on Defendant's material omission of material facts

25  that the Defendant's Purchased Products were legal to sell and possess.

26       15.    Reasonable consumers would be, and were, misled in the same manner as Plaintiff.

27       16.    Defendant had a duty to disclose the illegality of its misbranded products because

28  (a) it had exclusive knowledge of material facts not known or reasonably accessible to the

1  Plaintiff; and (b) the Defendant actively concealed a material fact from the Plaintiff. The

2  Defendant had a duty to disclose the information required by the labeling laws discussed herein

3  because of the disclosure requirements contained in those laws and because in making its "No

4  Trans Fat," "Evaporated Cane Juice," and were "All Natural" claims it made partial

5  representations that are misleading because other material facts have  not been disclosed.

6  <center>**PARTIES, JURISDICTION AND VENUE**</center>

7        17.    Plaintiff Suzanne Smedt is a resident of Los Gatos, California who purchased

8  Defendant's Purchased Products in California during the Class Period.

9        18.    Defendant The Hain Celestial Group, Inc. is a Delaware corporation with its

10  corporate headquarters and principal place of business in New York.  Defendant manufacturers,

11  markets, and sells its Purchased Products and Substantially Similar Products to consumers

12  through grocery and other retail stores throughout California and the United States.

13        19.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

14  because this is a class action in which:  (1) there are over 100 members in the proposed class;

15  (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

16  of the proposed class members exceed $5,000,000 in the aggregate.

17        20.    The Court has jurisdiction over the federal claim alleged herein pursuant to 28

18  U.S.C. § 1331, because it arises under the laws of the United States.

19        21.    The Court has jurisdiction over the California claims alleged herein pursuant to 28

20  U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

21  United States Constitution.

22        22.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

23  28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum or value of $75,000, and

24  is between citizens of different states.

25        23.    The Court has personal jurisdiction over Defendant because a substantial portion

26  of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do

27  business in California, has sufficient minimum contacts with California, and otherwise

28  intentionally avails itself of the markets in California through the promotion, marketing and sale

1   of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under

2   traditional notions of fair play and substantial justice.

3        24.    Because a substantial part of the events or omissions giving rise to these claims

4   occurred in this District and because the Court has personal jurisdiction over Defendant, venue is

5   proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

6                         **BACKGROUND**

7        **A.**    **Identical California and Federal Law Regulate Food Labeling**

8        25.    Food manufacturers are required to comply with identical state and federal laws

9   and regulations that govern the labeling of food products. First and foremost among these is the

10   FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

11        26.    Pursuant to the Sherman Law, California has expressly adopted the federal

12   labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

13   amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

14   or adopted on or after that date shall be the food regulations of this state." California Health &

15   Safety Code § 110100.

16        27.    Under both the Sherman Law and FDCA Section 403(a), food is "misbranded" if

17   "its labeling is false or misleading in any particular," or if it does not contain certain information

18   on its label or its labeling. Cal. Health & Safety Law §§ 110660, 110705; 21 U.S.C. § 343.

19        28.    In addition to its blanket adoption of federal labeling requirements, California has

20   also enacted a number of laws and regulations that adopt and incorporate specific enumerated

21   federal food laws and regulations. As described herein, Defendant has violated the following

22   Sherman Law sections: California Health & Safety Code § 110390 (unlawful to disseminate false

23   or misleading food advertisements that include statements on products and product packaging or

24   labeling or any other medium used to directly or indirectly induce the purchase of a food

25   product); California Health & Safety Code § 110395 (unlawful to manufacture, sell, deliver, hold

26   or offer to sell any falsely advertised food); California Health & Safety Code §§ 110398 and

27   110400 (unlawful to advertise misbranded food or to deliver or proffer for delivery any food that

28   has been falsely advertised); California Health & Safety Code § 110660 (misbranded if label is

1   false and misleading); California Health & Safety Code § 110665 (misbranded if label fails to

2   conform to the requirements set forth in 21 U.S.C. § 343(q)); California Health & Safety Code §

3   110670 (misbranded if label fails to conform with the requirements of 21 U.S.C. § 343(r));

4   California Health & Safety Code § 110705 (misbranded if words, statements and other

5   information required by the Sherman Law are either missing or not sufficiently conspicuous);

6   California Health & Safety Code § 110725 (misbranded if the common and usual ingredient

7   names are not used); California Health & Safety Code § 110740 (misbranded if contains artificial

8   flavoring, artificial coloring and chemical preservatives but fails to adequately disclose that fact

9   on label); California Health & Safety Code § 110765 (which makes it unlawful for any person to

10  misbrand any food); California Health & Safety Code § 110770 (unlawful for any person to

11  receive in commerce any food that is misbranded or to deliver or proffer for delivery any such

12  food).

13      29.     Plaintiff's claims are brought pursuant to the Sherman Law.

14      **B.     FDA Enforcement History**

15      30.     In recent years the FDA has become increasingly concerned that food

16  manufacturers have been disregarding food labeling regulations. To address this concern, the

17  FDA elected to take steps.  In October 2009, the FDA issued a *Guidance for Industry: Letter*

18  *regarding Point Of Purchase Food Labeling* and on March 3, 2010 the FDA issued "*Open Letter*

19  *to Industry from [FDA Commissioner] Dr. Hamburg*" to inform the food industry of its concerns

20  and to place the industry on notice that food labeling compliance was an area of enforcement

21  priority.  Additionally, the FDA has sent warning letters to the industry, including many of

22  Defendant's peer food manufacturers as well as a February 22, 2010 letter to Spectrum Organic

23  Products, Inc., a company within Defendant's network of subsidiaries, for the same types of

24  misbranded labels and deceptive labeling claims described herein, *i.e.*, "No Trans Fat," "All

25  Natural" and "Evaporated Cane Juice."

26      31.     Defendant did see, or should have seen, these warnings.  Defendant did not change

27  its labels in response to the warning letters sent to other companies.

28

1

## SHERMAN LAW VIOLATIONS

2

A.     **Terra Stripes & Blues Sea Salt Potato Chips**

3      32.     Plaintiff purchased Terra Stripes & Blues Sea Salt Potato Chips during the Class

4      Period.

5      33.     The following Substantially Similar Products were sold by Defendant during the

6      class period and are similar to Terra Stripes & Blues Sea Salt Potato Chips in that they are

7      essentially the same product, make the same "No Trans Fat" statement, are misbranded in the

8      same way (fat content is too high), misleading in the same way (no required disclaimer), and

9      violate the same regulations in the same manner as described herein.

10
      Terra Exotic Harvest Sea Salt Chips
11
      Terra Exotic Harvest Sweet Onion Chips
      Terra Stripes & Blues Gourmet Barbeque Chips
12
      Terra Sweets & Beets Chips
      Terra Sweets & Carrots Chips
13
      Terra Blues Potato Chips
      Terra Kettles Sea Salt Krinkle Cut Potato Chips

14
### 1.     The Terra Stripes & Blues Sea Salt Potato Chips Are Misbranded Under the Sherman Law
15

16     34.     The label on the package of Terra Stripes & Blues Sea Salt Potato Chips violates

17     the Sherman Law and is therefore misbranded.

18     35.     A copy of the label of Terra Stripes & Blues Sea Salt Potato Chips is attached as

19     Exhibit 1.

20     36.     The label on the package of Terra Stripes & Blues Sea Salt Potato Chips purchased

21     by Plaintiff states "No Trans Fat."  All packages of Terra Stripes & Blues Sea Salt Potato Chips

22     sold in the Class Period have the same "No Trans Fat" statement.

23     37.     "No Trans Fat" is a nutrient content claim.

24     38.     21 C.F.R. § 101.13 (h)(l) has been adopted and incorporated by the Sherman Law,

25     Cal. Health & Safety Code § 110100, and provides that:

26     If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams
(mg) of cholesterol, or 480 mg of sodium per reference amount customarily
consumed, per labeled serving, or, for a food with a reference amount customarily
27     consumed of 30 g or less … per 50 g … then that food must bear a statement
disclosing that the nutrient exceeding the specified level is present in the food as
28     follows: "See nutrition information for __ content" with the blank filled in with

the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

39.     Defendant's use of the "No Trans Fat" label statement violates the Sherman Law because Terra Stripes & Blues Sea Salt Potato Chips do not contain the required disclosure statement referring consumers to the nutrition panel for additional information.  This disclosure statement is required pursuant to 21 C.F.R. § 101.13(h) and California law. Defendant's Terra Stripes & Blues Sea Salt Potato Chips contain 14g of total fat or more per 50 grams, and therefore the disclosure statement required by 21 C.F.R. § 101.13(h) and Cal. Health & Safety Code § 110100 is required.

40.     All packages of Terra Stripes & Blues Sea Salt Potato Chips sold in the Class Period fail to make the disclosure statement.

41.     The failure to include the required disclosure statement renders the Terra Stripes & Blues Sea Salt Potato Chips misbranded under the Sherman Law.

42.     The FDA agrees.  On February 22, 2010, Spectrum Organic Products, Inc., a company within Defendant's network of subsidiaries, received a warning letter from the FDA. The letter states, in relevant part:

> In addition, your "Organic All Vegetable Shortening" product is misbranded because your product's label bears a nutrient content claim but fails to bear the disclosure statement required by 21 CFR 101.13(h). Your product bears the phrase "0 Grams Trans Fat" in two different locations on the principal display panel of the product label. The phrase "0 Grams Trans Fat" meets the definition of a nutrient content claim because it characterizes the product's level of trans fat, which is a nutrient of the type required to be in nutrition labeling (21 CFR 101.13(b)). The Nutrition Facts panel declares the nutrient value of 6 g saturated fat per serving (1 Tbsp). A food that bears a nutrient content claim that contains more than 4 g of saturated fat per serving must bear a disclosure statement on the label (immediately adjacent to the claim) referring the consumer to nutrition information for that nutrient, e.g., "See nutrition information for saturated fat content," as required by 21 CFR 101.13(h)(1); however, the label of your product fails to bear the required disclosure statement.

43.     Defendant's violations of the Sherman Law include Defendant's illegal labeling practices which misbrand the Terra Stripes & Blues Sea Salt Potato Chips as well as the illegal advertising, marketing, distribution, delivery and sale of Defendant's misbranded Terra Stripes & Blues Sea Salt Potato Chips to consumers in California and throughout the United States.

44.     Defendant could have easily complied with the labeling regulations by simply adding a disclosure statement to the front of its package under its "No Trans Fat" statements.

45.     As a result, consumers, including Plaintiff and the Class, bought products that fail to comply with the mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale. These products contained levels of fat the FDA has deemed to be deleterious to health and do not contain the required disclosure statement informing consumers of the levels of fat contained in Defendant's products.

46.     Plaintiff and the Class have been damaged by Defendant's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess based on Defendant's illegal labeling of the products and otherwise lost money.

47.     Plaintiff reasonably relied on the omission of fact/misrepresentation that Defendant's Terra Stripes & Blues Sea Salt Potato Chips were not misbranded under the Sherman Law and were therefore legal to buy and possess. However, reliance is not required to prove a claim under the unlawful prong of the UCL or the CLRA. Plaintiff would not have purchased Terra Stripes & Blues Sea Salt Potato Chips had she known they were illegal to purchase and possess.

48.     Because of the violations of 21 C.F.R. § 101.13 and Sherman Law § 110100, Defendant's products are misbranded under Sherman Law § 110660, Sherman Law § 110670 and Sherman Law § 110705. Defendant's act of selling a misbranded product violates Sherman Law § 110760 which prohibits the sale or possession of misbranded products.

49.     Defendant's sale of these misbranded Terra Stripes & Blues Sea Salt Potato Chips results in an independent violation of the unlawful prong that is separate from the labeling violation. Plaintiff has two distinct claims under the unlawful prong. The first arises from Defendant's unlawful "No Trans Fat" label statement on its Terra Stripes & Blues Sea Salt Potato Chips. When Plaintiff relied on these claims to her detriment when purchasing Defendant's Terra Stripes & Blues Sea Salt Potato Chips he was injured and therefore has a claim arising from her purchase of a product in reliance on the illegal "No Trans Fat" labeling claims made by Defendant.

50.     Plaintiff has a second, independent claim arising from being sold an illegal product in an unlawful sale. The only necessary element of this latter claim is Defendant's sale of a misbranded product that injured Plaintiff whose injury arises from the unlawful sale of an illegal product that is unlawful to sell and unlawful to possess. No reliance by the consumer is necessary. Plaintiff has been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, Plaintiff has been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

### 2.    The "No Trans Fat" Label Statement on Terra Stripes & Blues Sea Salt Potato Chips Is Misleading and Deceptive

51.     Plaintiff read and relied upon Defendant's front of package "No Trans Fat" label statement, and Plaintiff was thus deceived.

52.     Plaintiff was further unaware that Defendant's Terra Stripes & Blues Sea Salt Potato Chips contained total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related." Because of Defendant's unlawful and misleading "No Trans Fat" claim and omitted disclosure statement, Plaintiff was misled to believe that the product was healthier than other potato chip products by containing no appreciable levels of trans fats.

53.     Plaintiff was misled to believe the products did not contain fat at levels that may increase the risk of disease or health related conditions. Defendant's "No Trans Fat" label claims and omitted disclosure statement led Plaintiff to believe that Terra Stripes & Blues Sea Salt Potato Chips were a healthier choice than other similar products. In addition, Plaintiff did not know, and had no reason to know, that Defendant's Terra Stripes & Blues Sea Salt Potato Chips were misbranded by the "No Trans Fat" nutrient claim despite failing to meet the requirements to make those nutrient claims.

54.     21 C.F.R. § 1.21 establishes that failure to disclose material facts is a violation of the disclosure rules and is *per se* "misleading." The fat which Defendant failed to disclose is material.

55.     Defendant repeatedly violated these provisions when it prominently stated "No Trans Fat" on its labels of Terra Stripes & Blues Sea Salt Potato Chips without the mandatory disclosure statement.

56.     The "No Trans Fat" claim on Terra Stripes & Blues Sea Salt Potato Chips is misleading as these chips contain disqualifying levels of fat which exceed the 13 gram disclosure threshold.

57.     Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "No Trans Fat" claim on its food products if its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

58.     These regulations are intended to ensure that consumers are not misled into the erroneous belief that a product that claims to be low in trans fat, but actually has other unhealthy fat levels, is a healthy or healthier choice, because of the lack of trans fats.

59.     Nevertheless, Defendant's products' labels stated that its products contained "No Trans Fat" without such a disclosure even though the Terra Stripes & Blues Sea Salt Potato Chips contain fat in excess of 13 grams per serving.

60.     In October 2009, the FDA issued its FOP Guidance, to address its concerns about front of package labels. Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the improper and misleading "No Trans Fat" nutrient content claims from its Terra Stripes & Blues Sea Salt Potato Chips.

61.     Notwithstanding the Open Letter listed above, Defendant continued to use this improper trans fat nutrient content claim, despite the express guidance of the FDA in the Open Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

62. Defendant also ignored the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related." Defendant utilized improper trans fat nutrient claims on the labels of its Defendant's Terra Stripes & Blues Sea Salt Potato Chips. As such, these products ran afoul of FDA guidance as well as California and federal law.

63. The FDA has issued at least nine other warning letters to other companies for the same identical type of improper "No Trans Fat" nutrient content claims at issue in this case.

64. This Court has found this exact kind of label representation to be misleading.

65. "A disqualifying level of, say, saturated fat is four grams per 'reference amount customarily consumed.'" 21 C.F.R. § 101.13(h)(1); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. *Id.* This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading." *Id.*

66. This Court has already held that a disqualifying claim such as Defendant's "0 grams Trans Fat," even if accurate, may be unlawful and misleading. *Wilson v. Frito-Lay North America, Inc.*, 2013 WL 1320468 (N.D. Cal. April 1, 2013)(Plaintiffs sufficiently alleged claim that the "0 Grams Trans Fat" statement on bags of potato chips was deceptive because, accompanied by a disclosure of at least one of the ingredients that 21 C.F.R. § 101.13(h)(1) requires to be disclosed, they and other reasonable consumers would think that the statements on the labels make accurate claims about the labeled products' nutritional content when, in fact, they do not; disqualifying claim such as "0 grams Trans Fat," even if accurate, may be unlawful and misleading).

67. In *Chacanaca*, Judge Seeborg explained:

The federal regulatory statute provides for this precise scenario: that is, it categorizes as misleading and therefore prohibited even true nutrient content claims if the presence of another "disqualifying" nutrient exceeds and amount established by regulation. The Agency has by regulation imposed "disqualifying" levels for only four nutrients: total fat, saturated fat, cholesterol, and sodium. 21 C.F.R. §§ 101.13(h)(1), 101.14(a)(4). It is important to note how disqualifying claims work. A disqualifying level of say, saturated fat is four grams per

1

2

3

"reference amount customarily consumed." 21C.F.R. § 101.13 (h)(1). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

4

*Chacanaca*, 752 F. Supp. 2d at 1122 (emphasis in original).

5

68.     Despite the FDA's numerous warnings to industry, Defendant continued to sell

6

Terra Stripes & Blues Sea Salt Potato Chips bearing improper "No Trans Fat" nutrient content

7

claim without meeting the requirements to make this claim.

8

69.     Defendant's conduct misled Plaintiff because, with Defendant failing to disclose

9

the high fat, Plaintiff was misled into believing Defendant's product to be a healthier choice than

10

other similar products. Plaintiff is conscious of the healthiness of the products she purchases, and

11

Defendant's unlawful statements and omitted mandatory disclosures deprived Plaintiff of her

12

ability to take into account those foods' contributions, or not, to Plaintiff's total dietary

13

composition. Defendant concealed the deleterious attributes of its food, and Plaintiff was misled

14

and deceived, both by Defendant's statements of the healthy attributes ("No Trans Fat") and

15

failure to disclose the deleterious food attributes (fat content over 13g). Plaintiff was misled by

16

the Defendant's unlawfully prominent display of the ostensible good traits of its product, and

17

unlawful failure to disclose the bad.

18

70.     Plaintiff reasonably relied on the "No Trans Fat" label representation when making

19

her purchase decisions and was misled by the "No Trans Fat" representations as described below.

20

71.     Plaintiff would not have purchased Terra Stripes & Blues Sea Salt Potato Chips

21

had she known the truth about these products, i.e. that the products failed to only make positive

22

contributions to Plaintiff's diet and that the products contain one or more nutrients like total fat at

23

levels in the food that increased the risk of disease and/or dietary health related conditions and

24

that the Terra Stripes & Blues Sea Salt Potato Chips were not "healthier" than other similar

25

products.  Plaintiff had other food alternatives that satisfied such standards and Plaintiff also had

26

cheaper alternatives.  Reasonable consumers would have been misled in the same identical

27

manner as Plaintiff.

28

72.     Defendant's unlawful failure to use the mandatory disclosure is actionable. Plaintiff was unlawfully misled to believe that the products were low in fat by the "No Trans Fat" statement, and, as a result, she purchased the Terra Stripes & Blues Sea Salt Potato Chips. Plaintiff was misled and deceived through the very means and methods the FDA sought to regulate.

73.     Plaintiff and the Class would not have purchased the Terra Stripes & Blues Sea Salt Potato Chips had they not been misled by Defendant's unlawful "No Trans Fat" claims and been properly informed by Defendant of the deleterious attributes of those products, and had they otherwise not have been improperly misled and deceived as stated herein.

**B.     Coconut Dream Coconut Drink (Original)**

74.     Plaintiff purchased Coconut Dream Coconut Drink (Original) during the Class Period.

75.     The following Substantially Similar Products were sold by Defendant during the class period and are similar to Coconut Dream Coconut Drink (Original) in that they are essentially the same product, make the same "evaporated cane juice" statement, are misbranded in the same way (not common and usual name), misleading in the same way, and violate the same regulations in the same manner as described herein.

> Coconut Dream Coconut Drink Vanilla
> Coconut Dream Coconut Drink Enriched Vanilla

**1.     The Coconut Dream Coconut Drink (Original) Is Misbranded Under the Sherman Law**

76.     The label on the package of Coconut Dream Coconut Drink (Original) violates the Sherman Law and is therefore misbranded.

77.     A copy of the label of Coconut Dream Coconut Drink (Original) is attached as Exhibit 2.

78.     The label on the package of Coconut Dream Coconut Drink (Original) purchased by Plaintiff states "Evaporated Cane Juice." All packages of Coconut Dream Coconut Drink (Original) sold in the Class Period have the same statement.

79.    Defendant has unlawfully utilized the illegal term "Evaporated Cane Juice" in the ingredient list on its labels.

80.    Defendant unlawfully uses the illegal term "Evaporated Cane Juice" on its package labels of Coconut Dream Coconut Drink (Original) instead of describing the ingredient by its proper name, "sugar."

81.    Defendant uses the term "Evaporated Cane Juice" to make its products appear healthier than a product that contains "sugar" as an ingredient.  This illegal label is used to increase sales and to charge a premium by making a product seem healthier than it is in reality.

82.    At all times during the Class Period, the above listed Coconut Dream Coconut Drink (Original) listed "Evaporated Cane Juice" as an ingredient.

83.    The ingredient Defendant lists as "Evaporated Cane Juice" is not derived from a fruit or vegetable.

84.    The ingredient Defendant calls "Evaporated Cane Juice" is "sugar" or "dried cane sirup."

85.    Defendant's product labeling on Coconut Dream Coconut Drink (Original) fails to accurately identify sugar as an ingredient of its products. Rather, the label identifies "Evaporated Cane Juice" as an ingredient, despite the fact that the FDCA requires that the ingredient be called "sugar" or "dried cane syrup." The ingredient is not "juice," but is "sugar" or "syrup." 21 C.F.R. § 101.4 (a)(1) provides "[i]ngredients required to be declared on the label or labeling of a food…shall be listed by common or usual name…" 21 C.F.R.  § 102.5 requires that the common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name." ECJ is not the common or usual name of the ingredient on Defendant's Coconut Dream Coconut Drink (Original) label. Defendant is required to use "sugar" or "dried cane sirup" as the name for that ingredient on those labels.

86.    The ingredient Defendant calls "Evaporated Cane Juice" is not a juice as defined by the federal regulations. It is "sugar." 21 C.F.R. § 120.1 (a) defines "juice" as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions

of one or more fruits or vegetables, or any concentrates of such liquid or puree… ." Defendant's "Evaporated Cane Juice" ingredient does not meet that definition.

87.     The ingredient listed as "Evaporated Cane Juice" on Defendant's Coconut Dream Coconut Drink (Original) label is really "sucrose" as defined in 21 C.F.R. § 184.1854 which is required to be listed as sugar. While FDCA regulations generally provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name," the regulations expressly provide that "[f]or purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter."  21 C.F.R. § 101.4(b)(20)(emphasis in original).

88.     21 C.F.R. § 184.1854 lists the chemical names, CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." Defendant cannot call its ingredient ECJ but must call it "sugar."

89.     Those federal regulations, as well as the others discussed infra, have been adopted by California pursuant to the Sherman Law. Defendant's labeling of the ingredient as "Evaporated Cane Juice" violates the plain terms of those regulations.

90.     A Coconut Dream Coconut Drink (Original) label containing the term ECJ to describe sugar (1) is "false" (e.g., states the product is a juice when it is not); and (2) violates a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize. The term ECJ fails to reveal the basic nature of the food and its characterizing properties, *i.e.* the ingredient is sugar or syrup and not juice.

91.     FDCA regulations (which the Sherman Law incorporates into California law) provide that "Evaporated Cane Juice" is not a proper name for an ingredient.

92.     The regulations are clear. ECJ is an unlawful term because it is not the common or usual name for sugar. It is not a juice.

93.     Defendant could easily have complied with the labeling regulations by simply calling its "sugar" "sugar" (or "dried cane sirup") instead of ECJ. The use of the term "Evaporated Cane Juice" makes those labelings illegal.

94.     Plaintiff and the Class paid a premium price for products that fail to comply with mandatory labeling requirements and standards established by law such that the products are misbranded and rendered unfit for sale. These products contain ingredients not listed on the label and are thus illegal to sell or possess. In fact, the products were worthless due to their illegality and thus the unjustified premium paid for these products equaled their purchase price.

95.     Plaintiff and the Class paid a premium price for Coconut Dream Coconut Drink (Original) with the illegal term ECJ listed on the labels.

96.     Plaintiff and the Class have been damaged by Defendant's illegal conduct in that they purchased misbranded and worthless Coconut Dream Coconut Drink (Original) that was illegal to sell or possess based on Defendant's illegal labeling of the products.

97.     21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names.

98.     21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. It specifically provides in subsection (b)(20) that "[f]or purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter."  21 C.F.R. § 101.4(b)(20).

99.     Defendant has violated the regulatory provisions detailed above by failing to use the common or usual name for sugar as mandated by law. In particular, Defendant used the unlawful term ECJ on its products in violation of numerous federal and state labeling regulations designed to protect consumers from illegal misbranded products. The ingredient it names ECJ is not a "juice." It is "sugar" as per the federal regulations adopted by the Sherman Law.

100. Defendant violated 21 C.F.R. §§ 101.4 and 102.5 (adopted and incorporated by reference by Sherman Law § 110100) and Sherman Law § 110725. Sherman Law § 110725 mandates that a product is misbranded if the common and usual ingredient names are not used.

101. Defendant's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation that is separate from any labeling violation.

102. Pursuant to Sherman Law § 111825, the sale of such a misbranded product (*i.e.* one whose label fails to use the common and usual ingredient name as required by law) constitutes a criminal act punishable by up to twelve months in jail. As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act.

103. Plaintiff and the Class have been unlawfully deprived of money because the Defendant sold them a worthless, illegal Coconut Dream Coconut Drink (Original) that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by Defendant's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product.

104. The term ECJ is unlawful because the term does not represent the common or usual name of a food or ingredient. Foods that bear labels that contain the term ECJ are misbranded. Such unlawful conduct by Defendant is actionable under California law irrespective of any reliance by consumers such as Plaintiff.

105. Under California law, Coconut Dream Coconut Drink (Original) that is misbranded cannot be legally manufactured, advertised, distributed, possessed or sold. Because this product is illegal to possess, they have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food is a criminal act in California. When Plaintiff and the Class purchased an illegally misbranded product there is causation and injury even absent reliance on the ECJ misrepresentation that misbranded the product.

106.     Plaintiff reasonably relied on the omission of fact/misrepresentation that Defendant's Coconut Dream Coconut Drink (Original) was not misbranded under the Sherman Law and were therefore legal to buy and possess. However, reliance is not required to prove a claim under the unlawful prong of the UCL or the CLRA. Plaintiff would not have purchased Coconut Dream Coconut Drink (Original) had she known they were illegal to purchase and possess.

107.     Defendant's sale of these misbranded Coconut Dream Coconut Drink (Original) results in an independent violation of the unlawful prong that is separate from the labeling violation. Plaintiff has two distinct claims under the unlawful prong. The first arises from Defendant's unlawful "Evaporated Cane Juice" label statement on its Coconut Dream Coconut Drink (Original). When Plaintiff relied on these claims to her detriment when purchasing Defendant's Coconut Dream Coconut Drink (Original) she was injured and therefore has a claim arising from her purchase of a product in reliance on the illegal "No Trans Fat" labeling claims made by Defendant.

108.     Plaintiff has a second, independent claim arising from being sold an illegal product in an unlawful sale. The only necessary element of this latter claim is Defendant's sale of a misbranded product that injured Plaintiff whose injury arises from the unlawful sale of an illegal product that is unlawful to sell and unlawful to possess. No reliance by the consumer is necessary. Plaintiff has been deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, Plaintiff has been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

### 2.     The "Evaporated Cane Juice" Label Statement on Coconut Dream Coconut Drink (Original) Is Misleading and Deceptive

109.     Plaintiff read and relied upon Defendant's "Evaporated Cane Juice" label statement, and Plaintiff was thus deceived.

110.     21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California pursuant to the Sherman Law, prohibit manufacturers from referring to foods by anything other than their

common and usual names. 21 C.F.R. § 101.4, which has also been adopted by California pursuant to the Sherman Law, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law, or because the products lacked the ingredient entirely. In particular, the Defendant has used the unlawful term "evaporated cane juice" on its Coconut Dream Coconut Drink (Original) in violation of numerous labeling regulations designed to protect consumers from misleading practices.

111. The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

112. In listing "evaporated cane juice" as an ingredient on Coconut Dream Coconut Drink (Original), Defendant has made false and misleading misrepresentations in violation of 21 U.S.C. § 343(a)(1) because it has failed to reveal the basic nature of the food and its characterizing properties. Specifically, Defendant has failed to call dried cane syrup or sugar by its common or usual name, as required by 21 C.F.R. § 102.5.

113. In October 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, which advised the food industry that:

> …the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…
>
> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

1   http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/Guidance

2   Documents/FoodLabelingNutrition/ucm181491.htm

3       114.    Various FDA warning letters have made it clear that the use of the term

4   "evaporated cane juice" is misleading because the term does not represent the common or usual

5   name of a food or ingredient.

6       115.    On November 15, 2004, prior to its issuance of the aforementioned industry

7   guidance, the FDA sent a warning letter to Upscale Foods, Inc., in which it stated that "[y]our

8   product label declares 'organic evaporated cane juice' in the ingredient list; however, the

9   common or usual name for this ingredient is sugar."  Likewise, on April 3, 2008, the FDA sent a

10  warning letter to Hato Portero Farm, Inc., in which it stated "'evaporated sugar cane juice' is not

11  a common or usual name.  It is your responsibility to determine what this ingredient is (i.e.,

12  whether it is sucrose or another sweetener) and declare its common or usual name (see 21 CFR §

13  101.4(b)(20)).

14      116.    A reasonable consumer would expect that when Defendant lists the ingredients on

15  its products, the product's ingredients are given their common or usual name as defined by the

16  federal government and its agencies.

17      117.    Plaintiff did not know, and had no reason to know, that Defendant's Coconut

18  Dream Coconut Drink (Original) listed "evaporated cane juice" as an ingredient despite FDA

19  regulations requiring the use of the ingredient's common or usual name.

20      118.    Consumers are thus misled into purchasing Defendant's Coconut Dream Coconut

21  Drink (Original), which do not describe the basic nature of the food or its characterizing

22  properties or ingredients and which are "confusingly similar to the name of" another food, i.e.,

23  juice, "… not reasonably encompassed within the same name," as provided in 21 C.F.R. §

24  102.5(a).

25      119.    Defendant's conduct misled Plaintiff because, with Defendant failing call ECJ its

26  common and usual name, Plaintiff was misled into believing Defendant's Coconut Dream

27  Coconut Drink (Original) to be a healthier choice than other similar products. Plaintiff is

28  conscious of the healthiness of the products she purchases, and Defendant's unlawful statements

1  and omitted information deprived Plaintiff of her ability to take into account those foods'

2  contributions, or not, to Plaintiff's total dietary composition.

3       120.    Defendant concealed the deleterious attributes of its food, and Plaintiff was misled

4  and deceived, by Defendant's failure to disclose the deleterious food attributes (ECJ is really

5  sugar). Plaintiff was misled by the Defendant's display of the ECJ instead of "sugar."

6       121.    Plaintiff reasonably relied on the "Evaporated Cane Juice" label representation

7  when making her purchase decisions and was misled by the "Evaporated Cane Juice"

8  representations as described herein.

9       122.    Plaintiff would not have purchased Coconut Dream Coconut Drink (Original) had

10  she known the truth about this product, *i.e.*, that ECJ was really sugar.  Plaintiff had other food

11  alternatives that satisfied such standards and Plaintiff also had cheaper alternatives.  Reasonable

12  consumers would have been misled in the same identical manner as Plaintiff.

13       123.    Defendant's failure to call evaporated cane juice by its common and usual name is

14  actionable. Plaintiff was unlawfully misled to believe that the Coconut Dream Coconut Drink

15  (Original) was healthier, and, as a result, she purchased the Coconut Dream Coconut Drink

16  (Original). Plaintiff was misled and deceived through the very means and methods the FDA

17  sought to regulate.

18       124.    Plaintiff and the Class would not have purchased the Coconut Dream Coconut

19  Drink (Original) had they not been misled by Defendant's unlawful "Evaporated Cane Juice"

20  claim.

21       **C.    Sensible Portions Sea Salt Garden Veggie Straws**

22       125.    Plaintiff purchased Sensible Portions Sea Salt Garden Veggie Straws during the

23  Class Period.

24       126.    The following Substantially Similar Products were sold by Defendant during the

25  class period and are similar to Sensible Portions Sea Salt Garden Veggie Straws in that they are

26  essentially the same product, make the same "All Natural" statement, are misbranded in the same

27  way (added color), misleading in the same way, and violate the same regulations in the same

28  manner as described herein:

SECOND AMENDED CLASS ACTION COMPLAINT                                     23
CASE NO. 12-CV-03029 (EJD)

Sensible Portions Rosemary Olive Oil Garden Veggie Straws
Sensible Portions Lightly Salted Garden Veggie Straws

### 1. The Sensible Portions Sea Salt Garden Veggie Straws Are Misbranded Under the Sherman Law

127.    The label on the package of Sensible Portions Sea Salt Garden Veggie Straws violates the Sherman Law and is therefore misbranded.

128.    A copy of the label of Sensible Portions Sea Salt Garden Veggie Straws is attached as Exhibit 3.

129.    The label on the package of Sensible Portions Sea Salt Garden Veggie Straws purchased by Plaintiff states "All Natural."  All packages of Sensible Portions Sea Salt Garden Veggie Straws sold in the Class Period have the same statement.

130.    All of Defendant's Sensible Portions Sea Salt Garden Veggie Straws sold during the Class Period have added color (beetroot powder) even though the labels use "All Natural."

131.    Section 403(a) of the FDCA and California's Sherman Law prohibit food manufacturers from using labels that contain the terms "natural," "all natural," and "only natural" when they contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.

132.    The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food. Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.

133.    The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 FR 2302, 2407, January 6, 1993.

134.    21 C.F.R. § 70.3(f) makes clear that "where a food substance such as beet juice is deliberately used as a color, as in pink lemonade, it is a color additive." Similarly, any coloring or

preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.

135.    The FDA has sent out numerous warning letters to companies in which it has addressed "All Natural" claims.  In these letters, the FDA has informed the receiving companies that their products labeled "All Natural" were misbranded where they contained synthetic and artificial ingredients.

136.    For example, on August 16, 2001, the FDA sent a warning letter to Oak Tree Farm Dairy, Inc.  The letter "found serious violations" of the Federal Food, Drug and Cosmetic Act and Title 21, Code of Federal Regulations, Part 101 – Food Labeling (21 CFR 101), and stated in pertinent part:

> The term "all natural" on the "OAKTREE ALL NATURAL LEMONADE" label is inappropriate because the product contains potassium sorbate.  Although FDA has not established a regulatory definition for "natural," we discussed its use in the preamble to the food labeling final regulations (58 Federal Register 2407, January 6, 1993, copy enclosed).  FDA's policy regarding the use of "natural," means nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected to be in the food.  The same comment applies to use of the terms "100 % NATURAL" and "ALL NATURAL" on the "OAKTREE REAL BREWED ICED TEA" label because it contains citric acid.

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm.

137.    Defendant knew or should have known of these warning letters and other similar ones.  Despite the FDA's numerous warnings to industry, Defendant has continued to sell its Sensible Portions Sea Salt Garden Veggie Straws labeled "All Natural" that in fact contain added coloring.

138.    Defendant's "all natural" labeling practices also violate FDA Compliance Guide CPG Sec. 587.100, which states:  [t]he use of the words "food color added," "natural color," or similar words containing the term "food" or "natural" may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as "food" or "natural." California Health & Safety Code § 110740 prohibits the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on

the labeling. Defendant violated these provisions when it labeled its products as being "all natural" despite the fact that they contained unnatural coloring.

139.     Defendant has labeled its Sensible Portions Sea Salt Garden Veggie Straws "All Natural" when it is not.  This label violates the Sherman Law and is misbranded.

140.     Defendant's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation that is separate from any labeling violation.

141.     Plaintiff and the Class have been unlawfully deprived of money because the Defendant sold them a worthless, illegal Sensible Portions Sea Salt Garden Veggie Straws that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by Defendant's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product.

142.     Under California law, Sensible Portions Sea Salt Garden Veggie Straws is misbranded and cannot be legally manufactured, advertised, distributed, possessed or sold. Because this product is illegal to possess, they have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food is a criminal act in California. When Plaintiff and the Class purchased an illegally misbranded product there is causation and injury even absent reliance on the "All Natural" misrepresentation that misbranded the product.

143.     Plaintiff reasonably relied on the omission of fact/misrepresentation that Defendant's Sensible Portions Sea Salt Garden Veggie Straws was not misbranded under the Sherman Law and were therefore legal to buy and possess. However, reliance is not required to prove a claim under the unlawful prong of the UCL or the CLRA. Plaintiff would not have purchased Sensible Portions Sea Salt Garden Veggie Straws had she known they were illegal to purchase and possess.

144.     Defendant's sale of these misbranded Sensible Portions Sea Salt Garden Veggie Straws results in an independent violation of the unlawful prong that is separate from the labeling

1    violation. Plaintiff has two distinct claims under the unlawful prong. The first arises from

2    Defendant's unlawful "All Natural" label statement on its Sensible Portions Sea Salt Garden

3    Veggie Straws. When Plaintiff relied on these claims to her detriment when purchasing

4    Defendant's Sensible Portions Sea Salt Garden Veggie Straws she was injured and therefore has a

5    claim arising from her purchase of a product in reliance on the illegal "All Natural" labeling

6    claims made by Defendant.

7        145.    Plaintiff has a second, independent claim arising from being sold an illegal product

8    in an unlawful sale. The only necessary element of this latter claim is Defendant's sale of a

9    misbranded product that injured Plaintiff whose injury arises from the unlawful sale of an illegal

10   product that is unlawful to sell and unlawful to possess. No reliance by the consumer is necessary.

11   Plaintiff has been deprived of money in an illegal sale and given a worthless illegal product in

12   return. In addition, due to the law's prohibition of possession of such a product, Plaintiff has been

13   unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer

14   would agree to be placed.

15               **2.    The "All Natural" Label Statement on Sensible Portions Sea**
                 **Salt Garden Veggie Straws Is Misleading and Deceptive**
16

17       146.    Plaintiff read and relied upon Defendant's front of package "All Natural" label

     statement, and Plaintiff was thus deceived.
18

19       147.    Defendant's conduct misled Plaintiff because, with Defendant failing to

20   adequately disclose the presence of added coloring, Plaintiff was misled into believing

21   Defendant's product to be a healthier choice than other similar products.  Plaintiff is conscious of

     the healthiness of the products she purchases, and Defendant's unlawful statements and omitted
22

23   mandatory disclosures deprived Plaintiff of her ability to take into account those foods'

24   contributions, or not, to Plaintiff's total dietary composition. Defendant concealed the deleterious

25   attributes of its food, and Plaintiff was misled and deceived, both by Defendant's statements of

     the healthy attributes ("All Natural") and failure to adequately disclose the added food coloring.
26

27   Plaintiff was misled by the Defendant's unlawfully prominent display of the ostensible good traits

     of its product and unlawful failure to disclose the bad.
28

SECOND AMENDED CLASS ACTION COMPLAINT                                                    27
CASE NO. 12-CV-03029 (EJD)

148.    Plaintiff reasonably relied on the "All Natural" label representation when making her purchase decisions and was misled by the "All Natural" representations as described below.

149.    Plaintiff would not have purchased Sensible Portions Sea Salt Garden Veggie Straws had she known the truth about these products, i.e. that the products were not truly "all natural." Plaintiff had other food alternatives that satisfied such standards and Plaintiff also had cheaper alternatives.  Reasonable consumers would have been misled in the same identical manner as Plaintiff.

150.    Plaintiff and the Class would not have purchased the Sensible Portions Sea Salt Garden Veggie Straws had they not been misled by Defendant's unlawful "All Natural" claims and been properly informed by Defendant of the added coloring of those products, and had they otherwise not have been improperly misled and deceived as stated herein.

151.    A reasonable consumer would expect that when Defendant labels its products as "All Natural," the product's ingredients are "natural" as defined by the federal government and its agencies.  A reasonable consumer would also expect that when Defendant labels its products as "All Natural" the product ingredients are "natural" according to the common use of that word.  A reasonable consumer would, furthermore, expect that "All Natural" products do not contain added color and that any color is a naturally occurring constituent in the food.

152.    Consumers are thus misled into purchasing Defendant's Sensible Portions Sea Salt Garden Veggie Straws that are not "All Natural" as falsely represented on its labeling.

## PLAINTIFF AND THE PURCHASED PRODUCTS

153.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

154.    During the Class Period, Plaintiff spent more than $25.00 on the Purchased Products.

155.    Plaintiff read and reasonably relied on the labels as described herein when buying the Purchased Products.  Plaintiff relied on Defendant's labeling and based and justified the decision to purchase Defendant's products, in substantial part, on these labels.

156.    At point of sale, Plaintiff did not know, and had no reason to know, the truth about the Purchased Products as described herein, and the fact the Purchased Products were misbranded as set forth herein.  Plaintiff would not have bought the products had she known the truth about them.

157.    After Plaintiff learned that Defendant's Purchased Products were falsely labeled, Plaintiff stopped purchasing them.

158.    As a result of Defendant's actions, Plaintiff and thousands of others in California and throughout the United States purchased the Purchased Products.

159.    Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to buy the Purchased Products.

160.    A reasonable person would also attach importance to whether Defendant's products were "misbranded," *i.e.*, legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's products had she known they were not capable of being legally sold or held.

161.    Plaintiff had cheaper alternatives available and paid an unwarranted premium for the Purchased Products.

## CLASS ACTION ALLEGATIONS

162.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "Class:"

> All persons in California since June 12, 2008 who purchased one of the following products:
>
>> Terra Stripes & Blues Sea Salt Potato Chips,
>> Terra Exotic Harvest Sea Salt Chips
>> Terra Exotic Harvest Sweet Onion Chips
>> Terra Stripes & Blues Gourmet Barbeque Chips
>> Terra Sweets & Beets Chips
>> Terra Sweets & Carrots Chips
>> Terra Blues Potato Chips
>> Terra Kettles Sea Salt Krinkle Cut Potato Chips

Coconut Dream Coconut Drink Original
Coconut Dream Coconut Drink Vanilla
Coconut Dream Coconut Drink Enriched Vanilla
Sensible Portions Sea Salt Garden Veggie Straws
Sensible Portions Rosemary Olive Oil Garden Veggie Straws
Sensible Portions Lightly Salted Garden Veggie Straws

163.    The following persons are expressly excluded from the Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

164.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

165.    <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

166.    <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

    a.    Whether Defendant's three Purchased Products are misbranded under the Sherman Law;

    b.    Whether Defendant made unlawful "No Trans Fat," "evaporated cane juice," and "all natural" claims with respect to its Purchased Products sold to consumers;

    c.    Whether Defendant made misleading "No Trans Fat," "evaporated cane juice," and "all natural" claims with respect to its Purchased Products sold to consumers;

    d.    Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*,

    e.    Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief; and

    f.    Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class.

167.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Purchased Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

168.   <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent Plaintiff's interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

169.   <u>Superiority</u>:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an

1   important public interest will be served by addressing the matter as a class action.  Class

2   treatment of common questions of law and fact would also be superior to multiple individual

3   actions or piecemeal litigation in that class treatment will conserve the resources of the Court and

4   the litigants, and will promote consistency and efficiency of adjudication.

5          170.    The prerequisites to maintaining a class action for injunctive or equitable relief

6   pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

7   generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

8   with respect to the Class as a whole.

9          171.    The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3)

10   are met as questions of law or fact common to class members predominate over any questions

11   affecting only individual members, and a class action is superior to other available methods for

12   fairly and efficiently adjudicating the controversy.

13          172.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

14   encountered in the management of this action that would preclude its maintenance as a class

15   action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Business and Professions Code § 17200 *et seq.* - Unlawful Business Acts and Practices**

173.    Plaintiff incorporates by reference each allegation set forth above.

174.    Defendant's conduct constitutes unlawful business acts and practices.

175.    Defendant sold Purchased Products in California and the United States during the
Class Period.

176.    Defendant is a corporation and, therefore, is a "person" within the meaning of the
Sherman Law.

177.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of
Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the
misbranded food provisions of Article 6  of the Sherman Law.

178.   Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of § 17500 *et seq.*, which forbids untrue and misleading advertising.

179.   Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

180.   Defendant sold Plaintiff and the Class Purchased Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Purchased Products.

181.   As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products.

182.   Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.  Plaintiff and the Class paid a premium price for the Purchased Products.

183.   As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiff and the Class.

<div align="center">

**SECOND CAUSE OF ACTION**

**Business and Professions Code § 17200 *et seq.* - Unfair Business Acts and Practices**

</div>

184.   Plaintiff incorporates by reference each allegation set forth above.

185.   Defendant's conduct as set forth herein constitutes unfair business acts and practices.

186.   Defendant sold Purchased Products in California and the United States during the Class Period.

187.   Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's Purchased Products that they would not have purchased absent Defendant's illegal conduct.

188.   Defendant's deceptive marketing, advertising, packaging and labeling of its Purchased Products and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

189.   Defendant sold Plaintiff and the Class Purchased Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the Class paid a premium price for the Purchased Products.

190.   Plaintiff and the Class who purchased Defendant's Purchased Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

191.   The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason for the conduct.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.  Plaintiff and the Class paid a premium price for the Purchased Products.

192.   As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION

**Business and Professions Code § 17200 *et seq.* - Fraudulent Business Acts and Practices**

193.   Plaintiff incorporates by reference each allegation set forth above.

194.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200 *et seq.*

195.     Defendant sold Purchased Products in California and the United States during the Class Period.

196.     Defendant's misleading marketing, advertising, packaging and labeling of the Purchased Products and misrepresentation that the products were salable, capable of legal possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

197.     Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Purchased Products that they would otherwise not have purchased had they known the true nature of those products.

198.     Defendant sold Plaintiff and the Class Purchased Products that were not capable of being sold or held legally and that were legally worthless.  Plaintiff and the Class paid a premium price for the Purchased Products.

199.     As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiff and the Class.

### FOURTH CAUSE OF ACTION

**Business and Professions Code § 17500 *et seq.* - Misleading and Deceptive Advertising**

200.     Plaintiff incorporates by reference each allegation set forth above.

201.     Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500 *et seq.* for misleading and deceptive advertising against Defendant.

202.     Defendant sold Purchased Products in California and the United States during the Class Period.

203.     Defendant engaged in a scheme of offering Defendant's Purchased Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents

1    and nature of Defendant's Purchased Products.  Defendant's advertisements and inducements

2    were made within California and come within the definition of advertising as contained in

3    Business and Professions Code §17500 *et seq.* in that such product packaging and labeling, and

4    promotional materials were intended as inducements to purchase Defendant's Purchased Products

5    and are statements disseminated by Defendant to Plaintiff and the Class that were intended to

6    reach members of the Class.  Defendant knew, or in the exercise of reasonable care should have

7    known, that these statements were misleading and deceptive as set forth herein.

8         204.    In furtherance of its plan and scheme, Defendant prepared and distributed within

9    California and nationwide via product packaging and labeling, and other promotional materials,

10   statements that misleadingly and deceptively represented the composition and the nature of

11   Defendant's Purchased Products.  Plaintiff and the Class necessarily and reasonably relied on

12   Defendant's materials, and were the intended targets of such representations.

13        205.    Defendant's conduct in disseminating misleading and deceptive statements in

14   California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable

15   consumers by obfuscating the true composition and nature of Defendant's Purchased Products in

16   violation of the "misleading prong" of California Business and Professions Code § 17500 *et seq.*

17        206.    As a result of Defendant's violations of the "misleading prong" of California

18   Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the

19   expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and are

20   legally worthless.  Plaintiff and the Class paid a premium price for the Purchased Products.

21        207.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

22   entitled to an order enjoining such future conduct by Defendant, and such other orders and

23   judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

24   money paid for Defendant's Purchased Products by Plaintiff and the Class.

25                              **FIFTH CAUSE OF ACTION**

26        **Business and Professions Code § 17500 *et seq.* - Untrue Advertising**

27        208.    Plaintiff incorporates by reference each allegation set forth above.

28

SECOND AMENDED CLASS ACTION COMPLAINT                                    36
CASE NO. 12-CV-03029 (EJD)

209.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500 *et seq.*, regarding untrue advertising.

210.    Defendant sold Purchased Products in California and the United States during the Class Period.

211.    Defendant engaged in a scheme of offering Defendant's Purchased Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant's Purchased Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Purchased Products, and are statements disseminated by Defendant to Plaintiff and the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

212.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Purchased Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

213.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendant's Purchased Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

214.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Purchased Products.

215.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and

1  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

2  money paid for Defendant's Purchased Products by Plaintiff and the Class.

3  <center>**SIXTH CAUSE OF ACTION**</center>

4  <center>**Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.***</center>

5  216.   Plaintiff incorporates by reference each allegation set forth above.

6  217.   This cause of action is brought pursuant to the CLRA.  On August 8, 2012,

7  Plaintiff provided Defendant with notice pursuant to Cal. Civ. Code § 1782. Defendant has failed

8  to provide appropriate relief for its violations of the CLRA within 30 days of its receipt of the

9  CLRA demand notice.  Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA,

10  Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and

11  any other relief the Court deems proper.

12  218.   The violations of the CLRA by Defendant were willful, oppressive and fraudulent,

13  thus supporting an award of punitive damages.

14  219.   Consequently, Plaintiff and the Class are entitled to actual and punitive damages

15  against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code §

16  1782(a)(2), Plaintiff and the Class are entitled to an order enjoining the above-described acts and

17  practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys'

18  fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code

19  § 1780.

20  220.   Defendant's actions, representations and conduct have violated, and continue to

21  violate the CLRA, because they extend to transactions that are intended to result, or which have

22  resulted, in the sale of goods to consumers.

23  221.   Defendant sold Purchased Products in California during the Class Period.

24  222.   Plaintiff and members of the Class are "consumers" as that term is defined by the

25  CLRA in Cal. Civ. Code §1761(d).

26  223.   Defendant's Purchased Products were and are "goods" within the meaning of Cal.

27  Civ. Code §1761(a).

28

224.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

225.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it misrepresents the particular standard, quality or grade of the goods.

226.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

227.     By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

228.     Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

1          B.      For an order awarding, as appropriate, damages in excess of five million

2    dollars ($5,000,000), restitution or disgorgement to Plaintiff and the Class for all causes of action;

3          C.      For an order requiring Defendant to immediately cease and desist from

4    selling its products in the class definition above in violation of law; enjoining Defendant from

5    continuing to market, advertise, distribute, and sell these products in the unlawful manner

6    described herein; and ordering Defendant to engage in corrective action;

7          D.      For all remedies available pursuant to Cal. Civ. Code § 1780;

8          E.      For an order awarding attorneys' fees and costs;

9          F.      For an order awarding punitive damages;

10         G.      For an order awarding pre-and post-judgment interest; and

11         H.      For an order providing such further relief as this Court deems proper.

12      Dated:  August 30, 2013

                                       Respectfully submitted,

13

14

15                                     /s/  *Pierce Gore*
                                       Ben F. Pierce Gore (SBN 128515)
16                                     PRATT & ASSOCIATES
                                       1871 The Alameda, Suite 425
17                                     San Jose, CA 95126
                                       (408) 429-6506
18                                     pgore@prattattorneys.com

19                                     Charles Barrett
                                       CHARLES BARRETT, P.C.
20                                     6518 Highway 100
                                       Suite 210
21                                     Nashville, TN 37205
                                       (615) 515-3393
22                                     charles@cfbfirm.com

23                                     *Attorneys for Plaintiff*

24

25

26

27

28

1

**CERTIFICIATE OF SERVICE**

2      I, Pierce Gore, hereby declare that a true and complete copy of the foregoing was served

3   to all counsel of record via the Court's ECF filing system on August 30, 2013.

4

                                    /s/  *Pierce Gore*
5                                   Ben F. Pierce Gore (SBN 128515)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28