UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUZANNE SMEDT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC.,<br><br>Defendant. | Case No. 5:12-CV-03029-EJD<br><br>**ORDER GRANTING MOTION TO PARTIALLY DISMISS**<br><br>**[Re: Docket No. 55]** |

Presently before the Court is Defendant The Hain Celestial Group, Inc.'s ("Defendant" or "Hain") Motion to Dismiss Plaintiff Suzanne Smedt's Second Amended Complaint ("SAC"). Plaintiff filed this putative class action against Defendant alleging that several of Defendant's products have been improperly labeled so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L.R. 7-1(b), the motion was taken under submission without oral argument. Having fully reviewed the parties' papers, the Court grants Defendant's motion.

**I. BACKGROUND**

Plaintiff filed her original Complaint in this case on June 2, 2012. Dkt. No. 1. Plaintiff's First Amended Complaint ("FAC") was filed on October 1, 2012. Dkt. No. 25. Defendant filed a Motion to Dismiss, which was granted per this Court's order on August 6, 2013. Dkt. No. 51.

1

Case No. 5:12-CV-03029-EJD
ORDER GRANTING MOTION TO PARTIALLY DISMISS

Plaintiff's warranty claims were dismissed with prejudice and the remainder of her claims were dismissed for failure to meet the Rule 9(b) pleading standard.

Plaintiff filed the SAC on August 30, 2013 on behalf of herself and putative class of all persons in the United States who have purchased the same products and other of Defendant's similar food products. Dkt. No. 52. Defendant filed the present Motion to Dismiss on September 27, 2013. Dkt. No. 55.

Plaintiff is a California consumer who, since June 12, 2008, purchased Terra Stripes & Blues Sea Salt Potato Chips, Coconut Dream Coconut Drink (Original), and Sensible Portions Sea Salt Garden Veggie Straws. Dkt. No. 52 ¶ 2. Plaintiff argues that the following representations on the packaging of these and other of Defendant's food products were unlawful and/or misleading: (1) "no trans fat" (2) "evaporated cane juice" ("ECJ") and (3) "all natural." Plaintiff argues that the following "substantially similar" products bear the identical representations, violate the same regulations in the same manner, and are essentially the exact same product, except for flavor, and should be included in the "class products": Terra Exotic Harvest Sea Salt Chips, Terra Exotic Harvest Sweet Onion Chips, Terra Stripes & Blues Gourmet Barbeque Chips, Terra Sweets & Beets Chips, Terra Sweets & Carrots Chips, Terra Blues Potato Chips, Terra Kettles Sea Salt Krinkle Cut Potato Chips, Coconut Dream Coconut Drink Vanilla, Coconut Dream Coconut Drink Enriched Vanilla, Sensible Portions Rosemary Olive Oil Garden Veggie Straws, and Sensible Portions Lightly Salted Garden Veggie Straws. Id. ¶ 3.

Plaintiff alleges the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., (counts 4-5); and violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., (count 6).

**II. LEGAL STANDARD**

**A. Rule 8(a)**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

2
Case No. 5:12-CV-03029-EJD
ORDER GRANTING MOTION TO PARTIALLY DISMISS

rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**B. Rule 9(b)**

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts

3

explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

**C. Rule 12(b)(1)**

A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, adjudicating only cases which the Constitution and Congress authorize. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992).

At least one named plaintiff must have suffered an injury-in-fact. See Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

**III. DISCUSSION**

Plaintiff frames this case as consisting of two facets: (1) the "unlawful" part, claiming that Defendant's packaging and labels violate state and federal laws, making the products "misbranded" and therefore illegal to sell or possess, lacking economic value, and legally worthless; and (2) the

4

"fraudulent" part, claiming that the labels are misleading, deceptive, unfair, and fraudulent. Defendant argues that Plaintiff's claims regarding unpurchased products, ECJ claims, and the cause of action under the "unlawful" prong of the UCL should be dismissed.[1]

**A. Statutory Framework**

The operative statute in this matter is the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343 et seq. 21 U.S.C. § 343 establishes the conditions under which food is considered "misbranded." Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."

The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., incorporates the requirements of the FDCA as the food labeling requirements of the state of California. Plaintiff brings claims for relief under the UCL, FAL, and CLRA based on Defendant's alleged violations of the Sherman Law. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." Wang v. Massey Chevrolet, 97 Cal. App. 4th 856, 871 (2002). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 837 (2006). As for the "unfair" prong, "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." Morgan v. Wallaby Yogurt Co., Inc., No. 13-CV-00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. March 13, 2014) (citing Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 594 (2009)). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provision." Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1263, 1266 (2006) (citations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the

---

[1] Defendant does not move to dismiss Plaintiff's "no trans fat" and "all natural" claims, so the Court does not analyze those claims in this order.

1   utility of the defendant's conduct against the gravity of the harm to the alleged victim." Schnall v.

2   Hertz Corp., 78 Cal. App. 4th 1144, 1167 (2000).

### B. Primary Jurisdiction

Defendant argues that Plaintiff's ECJ claims should be dismissed or stayed under the primary jurisdiction doctrine. The primary jurisdiction doctrine allows courts to "stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Ivie v. Kraft Foods Global, Inc., No. C-12-02554-RMW, 2013 WL 685372, at *5 (N.D. Cal. Feb. 25, 2013) (quoting Clark v. Time Warner Cable, 523 F. 3d 1110, 1114 (9th Cir. 2008)). Courts consider the following factors in deciding whether the doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Ivie, 2013 WL 685372, at *5.

Where determination of a plaintiff's claim would require a court to decide an issue committed to the FDA's expertise without a clear indication of how the FDA would view the issue, courts of this district have found that dismissal or stay under the primary jurisdiction doctrine is appropriate. See Hood v. Wholesoy & Co., Modesto Wholesoy Co. LLC, No. 12-CV-5550-YGR, 2013 WL 3553979, at *5-6 (N.D. Cal. July 12, 2013) (ECJ and soy yogurt claims dismissed because the FDA's position is unsettled); Astiana v. Hain Celestial, 905 F. Supp. 2d 1013, 1016-17 (N.D. Cal. 2012) (holding that "[i]n absence of any FDA rules or regulations (or even informal policy statements) . . . the court declines to make any independent determination of whether [the label] was false or misleading" and the claims were barred under the primary jurisdiction doctrine).

In contrast, however, where FDA policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise. See Brazil v. Dole Food Co., 935 F. Supp. 2d 947, 959 (N.D. Cal. 2013) (where the FDA has established requirements applicable to the violations, there is no risk of undercutting the FDA's judgment and authority, thus a stay is not necessary).

With regard to ECJ claims, some courts in this district have decided that the FDA's position on the use of the term ECJ is unsettled and should therefore be determined by the FDA, not by courts. See Hood, 2013 WL 3553979, at *5-6 ("with respect to 'evaporated cane juice' . . . the FDA's position is not yet settled . . . the Court finds it appropriate to defer to the authority and expertise of the FDA. . . ."); Figy v. Amy's Kitchen, No. C-13-03816-SI, 2014 WL 1379915 (N.D. Cal. Apr. 9, 2014). Other courts – including this Court – have found that the FDA's guidance suggests that the agency does not view the issue as unsettled and the claim is not precluded by the primary jurisdiction doctrine. See Swearingen v. Yucatan Foods, L.P., No. C-13-3544-RS, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014); Gitson v. Clover Stornetta Farms, No. C-13-01517-EDL, 2014 WL 172338, at *12 (N.D. Cal. Jan. 15, 2014); Morgan v. Wallaby Yogurt Co., Inc., No. 13-CV-0296-WHO, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013); Werdebaugh v. Blue Diamond Growers, No. 12-CV-02724-LHK, 2013 WL 5487236, at *8-9 (N.D. Cal. Oct. 2, 2013) (FDA, through guidance and warning letters, has articulated a position on ECJ); Kane v. Chobani, Inc., No. 12-CV-2425-LHK, 2013 WL 3703981, at *17 (N.D. Cal. Jul. 12, 2013), vacated by 2013 WL 5529723 (N.D. Cal. Jul. 25, 2013), reconsidered by 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) (denying motion to dismiss ECJ claim on primary jurisdiction ground, but granting motion to dismiss claim that use of ECJ in yogurt violated standards of identity for yogurt on primary jurisdiction grounds)[2]; Ivie, 2013 WL 685372, at *12 (holding that ECJ claims could go forward under "deceptive" prong of UCL); Samet v. Procter & Gamble, Co., No. 12-CV-01891-PSG, 2013 WL 3124647, at *8 (N.D. Cal. June 18, 2013) (FDA regulation that common or usual name be used to identify ingredients encompasses ECJ).

At this juncture, the Court must dismiss the ECJ claims based on the primary jurisdiction doctrine. In the past, this Court, along with other courts in this district, has found that the primary jurisdiction doctrine did not bar adjudication of ECJ claims. However, in light of the FDA's March 5, 2014 notice in the Federal Register reopening the comment period for the draft guidance on the

---

[2] In Kane, 2013 WL 5289253, the court ultimately dismissed plaintiffs' ECJ allegations for failure to sufficiently state a claim under Rule 8(a) and Rule 9(b) because plaintiffs did not adequately plead that they believed the yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups." Id. at *7.

1   term ECJ, this Court finds it appropriate to apply the doctrine of primary jurisdiction in this case.[3]

2   Draft Guidance for Industry on Ingredients Declared as Evaporated Cane Juice; Reopening of

3   Comment Period; Request for Comments, Data, and Information, 79 Fed. Reg. 12507-08 (Mar. 5,

4   2014). The notice states that the FDA has not resolved the issue of whether ECJ is the common or

5   usual name of the particular sweetener and that the FDA is engaged in active rulemaking on the

6   issue. The notice explains that the FDA is seeking additional information on the method of

7   production of ECJ, the differences between ECJ and other sweeteners, and the basic characterizing

8   properties of ECJ. Resolution of these specific issues requires the expertise of the FDA rather than

9   the courts. The notice also states that after reviewing the comments, the FDA intends to revise the

10  draft guidance, if appropriate, and issue it in final form. If the Court proceeds with this action and

11  issues a decision that is contrary to the FDA's formal position on ECJ, it would disrupt the uniform

12  application of the FDA's regulatory rules. Figy, 2014 WL 1379915, at *3; see United States v.

13  Philip Morris USA Inc., 686 F.3d 832, 837 (D.C. Cir. 2012) ("'The primary jurisdiction doctrine

14  rests . . . on a concern for uniform outcomes (which may be defeated if disparate courts resolve

15  regulatory issues inconsistently). . . .'"). For this reason, courts find it appropriate to defer to an

16  agency when, as here, the agency is in the process of making a determination on a key issue in the

17  litigation. Figy, 2014 WL 1379915, at *3.

18  In conclusion, applying the doctrine of primary jurisdiction allows the Court to defer to the

19  FDA's expertise on food labeling and will ensure uniformity in administration of the regulations

20  regarding ECJ. Therefore, the Court finds it appropriate to dismiss the ECJ claims without

21  prejudice pursuant to the doctrine of primary jurisdiction.

22  At this point, the Court need not assess whether Plaintiff adequately alleged reliance for her

23  "unlawful" claims because the ECJ claims are dismissed on primary jurisdiction grounds. As this

24  Court has stated in previous orders, for all claims under the UCL that arise from deceptive

25  advertising, misrepresentation, or fraudulent conduct, as all of Plaintiff's claims here do, Plaintiff

26  must plead reliance in accordance with Rule 9(b) and show that "members of the public are likely

---

[3] The Court notes that the FDA's March 5, 2014 notice did not exist at the time that either party filed its pleadings, and therefore was not raised by either party. Per Federal Rule of Evidence 201, the Court takes judicial notice of the FDA's March 5, 2014 notice in the Federal Register.

8

Case No. 5:12-CV-03029-EJD
ORDER GRANTING MOTION TO PARTIALLY DISMISS

to be deceived." See Thomas v. Costco, 12-CV-02908-EJD, 2014 WL 1323192 (N.D. Cal. Mar. 31, 2014); Figy, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013); Kwikset, 51 Cal. 4th 310; Wilson v. Frito-Lay N. Am., 961 F. Supp. 2d 1134 (N.D. Cal. 2013).

**C. Standing**

Defendant argues that Plaintiff has no standing to sue for products not purchased. As noted, to establish Article III standing, a plaintiff must allege facts showing an injury-in-fact, causation, and redressability such that the injury will be likely redressed by a decision in the plaintiff's favor. Lujan, 504 U.S. at 561-62. An injury-in-fact requires showing "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and internal quotation marks omitted).

The UCL and FAL incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322-23 (2011); see also TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury . . . and 'immediate' causation. . . . Neither is required for Article III standing." (internal citations omitted)). Proposition 64 was enacted in 2004 as a means of "confin[ing] [UCL] standing to those actually injured by a defendant's business practices and [ ] curtail[ing] the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." Kwikset, 51 Cal. 4th at 321 (internal citations omitted). Under the UCL and FAL, a plaintiff suffers an injury-in-fact when he or she has "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010).

To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising." Id. To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct." In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009). However, "the plaintiff is not required to allege that those misrepresentations were the sole

9

Case No. 5:12-CV-03029-EJD
ORDER GRANTING MOTION TO PARTIALLY DISMISS

or even the decisive cause of the injury-producing conduct." Id.  A plaintiff can satisfy the UCL's standing requirement by alleging that he or she would not have bought the product but for the alleged misrepresentation.  Kwikset, 51 Cal. 4th at 330.

The California Supreme Court has held that the phrase "as a result of" in UCL section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."  Tobacco II, 46 Cal. 4th at 326.  This also applies under the UCL's "unlawful" and "unfair" prong, where the predicate unlawfulness is misrepresentation and deception.  Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373, 1385 (2010); see also Kwikset, 51 Cal. 4th 310; In re Actimmune Mkt. Litig., No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010), aff'd, 464 F. App'x 651 (9th Cir. 2011); Brazil, 935 F. Supp. 2d 947; Kane, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014).

While courts are split as to whether actual purchase is required to establish the requisite injury-in-fact, many courts in this district have found that claims regarding unpurchased products similar to Plaintiff's do not survive a motion to dismiss, either simply because the plaintiff did not purchase the products or because the unpurchased products were not substantially similar to the purchased products.  See Ivie, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013) ("there can be no requisite pecuniary injury where plaintiff did not herself purchase the product at issue"); Larsen v. Trader Joe's Co., No. C-11-05188-SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (finding that as a matter of law plaintiffs could not have suffered a particularized injury for products they did not purchase); Major v. Ocean Spray Cranberries, Inc., No. 12-CV-03067-EJD, 2013 WL 2558125 (N.D. Cal. June 10, 2013) (denying class certification due to lack of typicality where plaintiff did not purchase named products); Granfield v. NVIDIA Corp., No. C-11-05403-JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2010) ("when a plaintiff asserts claims [for defective product or false advertising] . . . claims relating to products not purchased must be dismissed for lack of standing"); Carrea v. Dreyer's Grand Ice Cream, Inc., No. C-10-01044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (dismissing claims based on products other than those purchased by the plaintiff).  In Miller v. Ghirardelli Chocolate Co., 912 F. Supp. 2d 861, 871 (N.D. Cal. 2012), the court analyzed why the products that plaintiff did not buy were not substantially

10
Case No. 5:12-CV-03029-EJD
ORDER GRANTING MOTION TO PARTIALLY DISMISS

similar to those he did buy. The court determined that because the identified products were different, looked different, and were labeled differently, plaintiff had not alleged "the sort of similarity of representation or product" that would amount to "the same basic mislabeling practice" such as was found in cases where the court found the unpurchased products to be substantially similar to the purchased products.

Where courts have found the unpurchased products to be substantially similar, claims for unpurchased products have survived motions to dismiss. In Astiana v. Dreyer's Grand Ice Cream, Inc., Nos. C-11-2910-EMC, C-11-3164-EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012), the court allowed plaintiff's claims for unpurchased products to proceed because the products were of the same type (ice cream), the labels of the products were the same, and the ice creams had many of the same ingredients. Id. at *13. In Anderson v. Jamba Juice Co., 888 F. Supp. 2d 1000 (N.D. Cal. 2012), the court found that the unpurchased products were substantially similar to the purchased products because the same alleged misrepresentation was on all the products and all the products contained allegedly non-natural ingredients. Id. at 1006.

In this case, Plaintiff asserts claims regarding eleven products she did not buy. Plaintiff alleges that the products "make the exact same representations, violate the exact same regulations in the same manner, and are essentially the exact same products, except for flavor" as those products she did purchase. Dkt. No. 52 ¶ 3. However, there is nothing in the SAC regarding the products' respective ingredients or packaging showing how the unpurchased products are substantially similar to the purchased products. See Ghirardelli, 912 F. Supp. 2d at 871; Dysthe v. Basic Research LLC, No. CV-09-8013-AG, 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) (unpurchased products were not "nearly identical" to purchased products because the number of ingredients was different and the packaging was different). Therefore, this Court cannot determine from the pleadings whether the named products are, in fact, substantially similar to the purchased products. Plaintiff's assertion that the products are "essentially the same" is too ambiguous, especially considering the heightened pleading standard of Rule 9(b) applies as Plaintiff's allegations "sound in fraud," as described in this Court's previous order. Dkt. No. 51. Plaintiff has not alleged the similarity of the products with sufficient particularity.

11
Case No. 5:12-CV-03029-EJD
ORDER GRANTING MOTION TO PARTIALLY DISMISS

Accordingly, Plaintiff lacks standing to bring claims as to unpurchased products and the claims are dismissed without prejudice.

### IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Partially Dismiss is GRANTED and Plaintiff's claims regarding evaporated cane juice as well as claims for unpurchased products are dismissed without prejudice.

**IT IS SO ORDERED**

Dated: May 30, 2014

EDWARD J. DAVILA
United States District Judge

.